1  MICHAEL D. ADAMS (SBN 185835)
   madams@rutan.com
2  BRIAN C. BERGGREN (SBN 279279)
   bberggren@rutan.com
3  DANIELLE SERBIN (SBN 294369)
   dserbin@rutan.com
4  RUTAN & TUCKER, LLP
   611 Anton Boulevard, Suite 1400
5  Costa Mesa, California 92626-1931
   Telephone:  714-641-5100
6  Facsimile:   714-546-9035

7  Attorneys for Defendant
   SAMSUNG ELECTRONICS AMERICA, INC.

8

9                    UNITED STATES DISTRICT COURT

10                  EASTERN DISTRICT OF CALIFORNIA

11                         FRESNO DIVISION

12  PAUL KERKORIAN, an individual, on        Case No. 1:18-cv-00870-DAD-SKO
    behalf of himself and all other similarly
13  situated,                                **SAMSUNG'S NOTICE OF MOTION
                                             AND MOTION TO DISMISS
14              Plaintiff,                    PLAINTIFF'S FIRST AMENDED
                                             COMPLAINT; MEMORANDUM OF
15        vs.                                 POINTS AND AUTHORITIES IN
                                             SUPPORT THEREOF**
16  SAMSUNG ELECTRONICS AMERICA,
    INC., a New Jersey corporation, and DOES  **Filed Concurrently Herewith:**
17  1 through 25, inclusive,
                                              **1.  Request for Judicial Notice**
18              Defendants.                   **2.  [Proposed] Order**

19                                           Date:     October 2, 2018
                                             Time:     9:30 AM
20                                           Judge:    Hon. Dale A. Drozd
                                             Place:    Courtroom 5
21                                                     2500 Tulare Street
                                                       Fresno, California 93721
22

23

24

25

26

27

28

Rutan & Tucker, LLP
attorneys at law

2314/034982-0002
12755200         MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1   ## NOTICE OF MOTION AND MOTION

2   **TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

3       **PLEASE TAKE NOTICE THAT** on October 2, 2018, at 9:30 a.m. or as soon as

4   the matter may reasonably be heard thereafter, before the Honorable Dale A. Drozd,

5   U.S.D.J., in Courtroom 5 of the United States Courthouse for the Eastern District of

6   California, Fresno Division, 2500 Tulare Street, Fresno, California 93721, Defendant

7   Samsung Electronics America, Inc. ("Samsung") will, and hereby does, move this Court to

8   dismiss the First Amended Complaint ("FAC") brought by Plaintiff Paul Kerkorian

9   ("Plaintiff") in its entirety and each and every claim for relief therein for failure to state a

10  claim.

11      Pursuant to Federal Rule of Civil Procedure 12(b)(6), Samsung moves this Court to

12  dismiss the FAC in its entirety because Plaintiff fails to allege facts sufficient to state any

13  claim upon which relief may be granted.  Samsung further moves this Court to dismiss the

14  claims for relief sounding in fraud pursuant to Federal Rule of Civil Procedure 9(b).  In

15  addition, Samsung requests that this Court strike Plaintiff's prayer for injunctive relief

16  pursuant to Federal Rule of Civil Procedure 12(f).

17      This Motion is based upon this Notice of Motion and Motion, the Memorandum of

18  Points and Authorities, the Request for Judicial Notice, the record in this action, and upon

19  such other matters as may be presented to the Court at the time of the hearing.

20      Pursuant to the Court's Standing Order for Civil Actions, Samsung's counsel met and

21  conferred telephonically with Plaintiff's counsel on August 24, 2018 to discuss the grounds

22  for this Motion.  The parties were unable to reach a resolution other than to have the Motion

23  heard by the Court.

24  Dated:  August 28, 2018                RUTAN & TUCKER, LLP

25

26                          By:      /s/ Michael D. Adams

27                              Michael D. Adams
                                Attorneys for Defendant
28                              SAMSUNG ELECTRONICS
                                AMERICA, INC.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF THE RELEVANT FACTS ............................................... 4

III.  LEGAL STANDARD ..................................................................................... 7

    A.   Rule 12(b)(6) Requires Dismissal Of Claims Lacking Factual Or Legal Plausibility ............................................................................. 7

    B.   Rule 9(B) Requires Plaintiff To Allege Misstatements With Particularity ........................................................................................ 7

IV.   ARGUMENT .................................................................................................. 8

    A.   The FAL, UCL, Misrepresentation, And Implied Warranty Claims Fail Under Both Rule 12(b)(6) and Rule 9(b) ......................... 8

        1.   Alleged Misstatements About The POWERbot's "Reliability" Are Not Actionable Under California Law ................. 9

        2.   To The Extent Plaintiff Attempts To Recast Allegations As Not Being Tied To A "Reliability" Representation, They Fail Rule 9(b) ..................................................................... 12

    B.   Plaintiff's UCL Claim Fails For The Additional Reason That Plaintiff Does Not Allege Conduct That Is Unlawful, Unfair, or Fraudulent ........................................................................................ 14

    C.   Plaintiff's Claims For Breach Of Implied Warranty Fail For Several Reasons ................................................................................. 16

        1.   Plaintiff Cannot Plead That Samsung Failed To Honor The Exclusive Remedy Set Forth In The Express Warranty As Required To State A Claim for Breach Of Implied Warranty ........................................................................ 16

        2.   Plaintiff Fails To Allege Vertical Privity With Samsung As Required To State A Claim For Breach Of Implied Warranty ......................................................................................... 18

        3.   Plaintiff Fails To Allege A Particular Purpose As Required To State A Claim For Breach Of The Implied Warranty Of Fitness For A Particular Purpose ............................... 19

    D.   Plaintiff's Strict Liability Claim Is Barred By The Economic Loss Doctrine ................................................................................... 20

    E.   Plaintiff's Unjust Enrichment "Claim" Must Be Dismissed Because It Is Not An Independent Claim For Relief, Is Duplicative, And Is Barred By The Express Warranty .............................. 21

**Page**

F.    Plaintiff's Prayer For Injunctive Relief Should Be Stricken
      Because He Cannot Satisfy The Article III Standing
      Requirement and Because He Ignored Samsung's Offer To
      Provide Him The Same Relief He Seeks Through An
      Injunction ................................................................................................. 22

V.    CONCLUSION ................................................................................................. 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alvarez v. Chevron Corp.*,
  656 F.3d 925 (9th Cir. 2011)..............................................................12

*Anunziato v. eMachines, Inc.*,
  402 F. Supp. 2d 1133 (C.D. Cal. 2005) ...................................9-10

*Backhaut v. Apple, Inc.*,
  74 F. Supp. 3d 1033 (N.D. Cal. 2014) ..........................................15

*Bates v. UPS*,
  511 F.3d 974 (9th Cir. 2007)...........................................................22

*Beshwate v. BMW of N. Am.*,
  LLC, No. 1:17-CV-00417-SAB, 2017 WL 6344451 (E.D. Cal. Dec. 12,
  2017) ......................................................................................9-10

*Birdsong v. AT&T Corp.*,
  No. C12-6175 TEH, 2013 WL 1120783 (N.D. Cal. Mar. 18, 2013) ............................17

*Carlin v. DairyAmerica, Inc.*,
  978 F. Supp. 2d 1103 (E.D. Cal. 2013).........................................21

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ..........................................................................22

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008)........................................................18

*Davidson v. Apple, Inc.*,
  No. 16-CV-04942-LHK, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ............. 8, 12, 23

*Doe v. Skyway House, Inc.*,
  No. 2:16-CV-00627-TLN-CMK, 2017 WL 2984878 (E.D. Cal. July 13,
  2017) ...............................................................................................23

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) .........................................10

*Fisher v. Monster Beverage Corp.*,
  125 F. Supp. 3d 1007 (C.D. Cal. 2013), *aff'd in part, rev'd in part on
  other grounds*, 656 F. App'x 819 (9th Cir. 2016).......................11

Rutan & Tucker, LLP
attorneys at law

2314/034982-0002
12755200

-iii-

MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**Page(s)**

**FEDERAL CASES (CONT'D)**

*Frenzel v. AliphCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014) ........................................................ 17

*Galitski v. Samsung Telecomm. Am., LLC*,
   No. 12–cv–04782, 2013 WL 6330645 (N.D. Tex. Dec. 5, 2013) .................... 17

*Harrington v. Daiso Japan*,
   No. 10-3876 SC, 2011 WL 2110764 (N.D. Cal. May 26, 2011) ..................... 8

*Herskowitz v. Apple Inc.*,
   940 F. Supp. 2d 1131 (N.D. Cal. 2013) ................................................ 14-15

*Hunt v. Rousmanier's Adm'rs*,
   21 U.S. 174 (1823) ................................................................................ 23

*Hunter v. Nature's Way Prods., LLC*,
   No. 16-cv-532-WQH, 2016 WL 4262188 (S.D. Cal. Aug. 12, 2016) .............. 23

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
   802 F. Supp. 2d 1070 (N.D. Cal. 2011) ..................................................... 21

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007) ................................................. 7, 17

*Jensen v. Quality Loan Serv. Corp.*,
   702 F. Supp. 2d 1183 (E.D. Cal. 2010) ..................................................... 24

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..................................................... 7-8, 12, 15

*Kent v. Hewlett-Packard Co.*,
   No. 09-5341 JF PVT, 2010 WL 2681767 (N.D. Cal. July 6, 2010) ............... 19

*Lamon v. Amrheign*,
   No. 1:12-CV-00296-AWI-GS, 2014 WL 3940286 (E.D. Cal. Aug. 12,
   2014) ................................................................................................... 18

*Long v. Hewlett-Packard Co.*,
   No. C 06-02816 JW, 2007 WL 2994812 (N.D. Cal. July 27, 2007), *aff'd*,
   316 F. App'x 585 (9th Cir. 2009) ............................................................. 10

*Marchante v. Sony Corp. of Am.*,
   801 F. Supp. 2d 1013 (S.D. Cal. 2011) ..................................................... 20

Rutan & Tucker, LLP
*attorneys at law*

**Page(s)**

**FEDERAL CASES (CONT'D)**

*Mason v. Nature's Innovation, Inc.*,
    No. 12-cv-3019 BTM (DHB), 2013 WL 1969957 (S.D. Cal. May 13,
    2013) .............................................................................................................. 23

*McCarty v. Johnson & Johnson*,
    No. 10-cv-350-OWW–DLB, 2010 WL 2629913 (E.D. Cal. June 29,
    2010) .............................................................................................................. 18

*Moore v. Apple, Inc.*,
    73 F. Supp. 3d 1191 (N.D. Cal. 2014) ......................................................... 14

*Musgrave v. ICC/Marie Callender's Gourmet Prod. Div.*,
    No. 14-CV-02006-JST, 2015 WL 510919 (N.D. Cal. Feb. 5, 2015) ............ 21

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ...................................................................................... 22

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir.
    2009) .............................................................................................................. 12

*Palmer v. Apple Inc.*,
    Case No. 5:15-cv-05808-RMW, 2016 WL 1535087 (N.D. Cal. Apr. 15,
    2016) ........................................................................................................ 13, 15

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ........................................................................ 22

*Park-Kim v. Daikin Indus., Ltd.*,
    No. 215CV09523CASKKX, 2016 WL 5958251 (C.D. Cal. Aug. 3, 2016) .................. 18

*Segemen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) ........................................................................... 8

*Smith v. LG Elecs. U.S.A., Inc.*,
    No. C 13-4361 PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) .............. 19

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ........................................................................... 7

**Page(s)**

**FEDERAL CASES (CONT'D)**

*Stearns v. Select Comfort Retail Corp.*,
No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ....................................... 12

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998)........................................................................................... 7

*Sumer v. Carrier Corp.*,
No. 14-CV-04271, 2015 WL 758314 (N.D. Cal. Feb. 20, 2015) ................................... 10

*Summit Tech., Inc. v. High–Line Med. Instruments, Co.*,
933 F. Supp. 918 (C.D. Cal. 1996) ...............................................................................9-11

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007)............................................................................................. 8

*Vitt v. Apple Comput., Inc.*,
469 F. App'x 605 (9th Cir. 2012) ..................................................................................... 9

*Wang v. OCZ Tech. Group, Inc.*,
276 F.R.D. 618 (N.D. Cal. 2011) ................................................................................. 8, 13

*Winkleman v. CDCR*,
No. 2:13-CV-1480 MCE DAD, 2015 WL 222542 (E.D. Cal. Jan. 14,
2015) ............................................................................................................................... 22

**CALIFORNIA STATE CASES**

*All W. Elecs., Inc. v. M-B-W, Inc.*,
64 Cal. App. 4th 717 (1998) ........................................................................................... 18

*Am. Suzuki Motor Corp. v. Super. Court*,
37 Cal. App. 4th 1291 (1995) ......................................................................................... 19

*Benson v. S. California Auto Sales, Inc.*,
239 Cal. App. 4th 1198 (2015) ......................................................................................... 5

*Burr v. Sherwin Williams Co.*,
268 P.2d 1041 (Cal. 1954) .............................................................................................. 18

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
973 P.2d 527 (Cal. 1999) ............................................................................................14-15

*Jimenez v. Super. Court*,
58 P.3d 450 (Cal. 2002) ...............................................................................................20-21

**Page(s)**

**CALIFORNIA STATE CASES (CONT'D)**

*Jogani v. Super. Court*,
    165 Cal. App. 4th 901 (2008) ...................................................................... 21

*Keith v. Buchanan*,
    173 Cal. App. 3d 13 (1985).......................................................................... 19

*McKell v. Wash. Mut., Inc.*,
    142 Cal. App. 4th 1457 (2006) .................................................................... 15

*Robinson Helicopter Co. v. Dana Corp.*,
    102 P.3d 268 (Cal. 2004) ............................................................................ 20

**CALIFORNIA STATE STATUTES**

California Business & Professions Code
    Section 17200.................................................................................... 2, 14
    Section 17500......................................................................................... 2

California Civil Code
    Section 1782(b) ...................................................................................... 5

California Commercial Code
    Section 2719(1)(a)................................................................................. 16
    Section 2719(1)(b) ................................................................................ 16

**FEDERAL RULES**

Federal Rule of Civil Procedure
    Rule 9(b).............................................................2, 7-9, 12-13, 15
    Rule 11 .................................................................................................. 18
    Rule 12(b)(6)........................................................................ 2, 7, 8, 12, 17
    Rule 12(f) .............................................................................................. 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Rutan & Tucker, LLP
*attorneys at law*

2314/034982-0002
12755200

-vii-
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This lawsuit is based on the false premise that judicial relief is needed to remedy consumer harm.  Although the FAC alleges Samsung misrepresented that its robotic vacuum cleaners—POWERbots—are "reliably" remotely operable (*see* FAC ¶¶ 16, 17, 35, 37, 46, 48, 55, 57, 65, 67, 79, 81, 93, 95, 105, 107, 117, 119), it intentionally omits highly material (and claim-dispositive) facts that Plaintiff's POWERbot is ***still under warranty*** and that Plaintiff ***ignored*** Samsung's offer to resolve any issues with his POWERbot under that warranty.  Under the disingenuous guise of consumer protection, Plaintiff asserts eight causes of action on behalf of himself and a putative class claiming that Samsung's alleged representations that POWERbots are "reliably" remotely operable are false because POWERbots do not always work via Amazon's virtual voice assistant, called "Alexa," or Samsung's phone applications, called Samsung Connect and Smart Home (collectively, the "Remote Applications").  This is a lawsuit that seeks to address a non-existent problem.

This is not a case where judicial involvement is necessary for consumer protection.  To the contrary, this is a case where the consumer ignored Samsung's offer to resolve any issue the consumer faced so that lawyer-driven litigation could proceed apace.   After receiving Plaintiff's demand letter pursuant to the California Legal Remedies Act (the "CLRA Letter"), Samsung asked to inspect Plaintiff's allegedly defective POWERbot "[i]n light of Samsung's commitment to customer service" and "to evaluate potential service options."  (Request for Judicial Notice ("RJN"), Exh. 3.)  Samsung reminded Plaintiff that his POWERbot is still covered by the express warranty, attempted to arrange an inspection in Plaintiff's home by an authorized service technician to address any alleged connectivity issues (which may have numerous causes unrelated to the product), and explained that if "there actually is a problem with the product" then Samsung "will resolve the issue since the product is still under warranty."  (RJN, Exh. 4.)  Plaintiff never responded to Samsung's offer and instead filed this lawsuit.

Plaintiff omits any mention that his POWERbot is still under warranty, or that Samsung offered "to resolve the issue" (if there was an actual issue), presumably because such facts undercut the ostensible premise of this action that judicial involvement is needed to remedy consumer harm. Plaintiff also presumably omits these highly material facts because they negate Plaintiff's claims for breach of implied warranties, as Plaintiff must show that Samsung failed to honor the express warranty to state such claims. However, even with Plaintiff's omission of these highly material facts in hopes of stating a claim, the FAC still fails as a matter of law.

Plaintiff's claims for False Advertising under the Cal. Bus. & Prof. Code § 17500 ("FAL"), Unfair Business Practices under the Cal. Bus & Prof. Code § 17200 ("UCL"), misrepresentation, and breach of implied warranties fail because they are premised on the allegation that Samsung advertises the POWERbot as "reliably" working remotely via Alexa and the Remote Applications. (*See* FAC ¶¶ 16, 17, 35, 37, 46, 48, 55, 57, 65, 67, 79, 81, 93, 95, 105, 107, 117, 119.) California law is clear that advertising statements that a product works "reliably" constitute mere puffery and are not actionable representations as a matter of law. Each of Plaintiff's claims should therefore be dismissed without leave to amend pursuant to Rule 12(b)(6) because no amount of artful pleading can cure this defect.

Plaintiff cannot run from the alleged "reliability" misrepresentations as they form the basis for the entire FAC. However, to the extent Plaintiff attempts to recast certain alleged misrepresentations as somehow distinct from a "reliability" misrepresentation in order to survive a motion to dismiss, Plaintiff's claims nonetheless fail. Rule 9(b) requires that claims sounding in fraud, such as these, be supported by particularized allegations showing, at a minimum, the actual representations from Samsung, the specific materials that Plaintiff reviewed, where he reviewed those representations, when he reviewed those representations, and which particular representations Plaintiff found to be material. Plaintiff alleges none of this. Accordingly, these claims should also be dismissed pursuant to Rule 9(b).

Plaintiff's UCL claim is deficient for an additional reason. Aside from failing to allege an actionable misrepresentation, let alone with the particularity required by Rule 9(b),

1  Plaintiff fails to allege conduct that satisfies the requisite "unfair, unlawful, or fraudulent"

2  prong of a UCL claim.

3      Plaintiff's claims for breach of implied warranties fail for at least two additional

4  reasons.  First, Plaintiff has not alleged that Samsung failed to comply with the terms of the

5  express warranty that sets forth Plaintiff's exclusive remedy of repair or replacement.

6  Indeed, Plaintiff cannot plausibly allege that Samsung failed to comply with the express

7  warranty because it is Plaintiff, not Samsung, who disregarded the express warranty and

8  Samsung's offer to resolve any issues with Plaintiff's POWERbot pursuant to its terms.

9  Second, Plaintiff does not allege that he bought his POWERbot from Samsung and thus fails

10  to satisfy the vertical privity requirement.

11      Plaintiff's implied warranty of fitness for a particular purpose claim fails for yet

12  another reason—Plaintiff does not allege a "particular purpose" for the POWERbot beyond

13  its ordinary purpose of a remotely operable vacuum cleaner.

14      Plaintiff's unjust enrichment claim fails for at least three additional reasons: (i) unjust

15  enrichment is not a separate claim for relief; (ii) this claim is duplicative of the FAL, UCL,

16  and misrepresentation claims; and (iii) the existence of the express warranty negates this

17  claim.

18      Plaintiff's strict liability claim fails because California law prohibits a plaintiff from

19  pursuing strict liability claims where the plaintiff does not allege physical harm to himself

20  or a different product.

21      Finally, Plaintiff's prayer for injunctive relief ordering Samsung to repair the

22  POWERbot is wholly inappropriate and should be stricken where, as here, Samsung already

23  offered that same relief to Plaintiff, which Plaintiff ignored so he could file a putative class

24  action suit seeking damages and attorneys' fees.

25      In sum, because the FAC is based on Samsung's alleged advertising that its

26  POWERbots work "reliably," and in light of the express warranty that Plaintiff failed to

27  plead, Plaintiff has demonstrated an inability to remedy the FAC's fatal flaws with any good

28  faith amendments.  The FAC should therefore be dismissed with prejudice.

## II.   STATEMENT OF THE RELEVANT FACTS

Samsung sells a line of "smart" remotely-operable, robotic vacuum cleaners called POWERbots.  (FAC ¶ 2.)  Plaintiff purchased a POWERbot model SR1AM7040WG on or around January 18, 2018.  (*Id.* ¶ 1.)  According to Plaintiff, Samsung advertises its POWERbot as "reliably" working with Amazon's Alexa as well as iOS and Android devices through two smartphone applications, Samsung Connect and Smart Home (collectively referred to as the "Remote Applications").  (*Id.* ¶¶ 16, 17.)

On April 16, 2018, Plaintiff's attorney sent a letter to Samsung pursuant to the California Consumer Legal Remedies Act ("CLRA") explaining that Plaintiff's Samsung POWERbot experienced errors with remote operability.  (RJN, Exh. 2.)  Specifically, Plaintiff complained that although he was able to remotely link his POWERbot with the Samsung Smart Home application for his iPhone, he experienced difficulties, including: the application would not save Plaintiff's credentials; the application only worked "on certain router bands"; the application "requires [him] to link [his] phone to that band instead of the band [he] normally use[s]"; and "for some time," the "icon" for the application "was missing" from his iPhone.  (*Id.* at 2.)  Plaintiff claimed that due to these alleged remote operability issues the POWERbot did not work as advertised in violation of the CLRA's prohibition against false and deceptive advertising.  (*See id.* at 3.)

Plaintiff's CLRA letter demanded that Samsung remedy the alleged issues with his POWERbot.  (RJN, Exh. 2.)  In response, Samsung offered to inspect the POWERbot to "ascertain whether there actually is a problem with the product."  (RJN, Exh. 4.)  Samsung further explained that, if there was a problem with Plaintiff's POWERbot, Samsung would "resolve the issue" under Samsung's express warranty.  (*Id.*)

Samsung's express warranty for Plaintiff's POWERbot—a document available on Samsung's website—provides that "this limited warranty covers manufacturing defects in materials and workmanship encountered in normal, noncommercial use of [the] product."  (RJN, Exh. 1.)  Contrary to Plaintiff's allegations that Samsung represents the POWERbot as working "reliably," the express warranty states that "SAMSUNG does not warrant

uninterrupted or error-free operation of the product." (*Id.*)  Additionally, the express warranty provides in all capital letters and with conspicuous language that "THIS LIMITED WARRANTY . . . STATES YOUR EXCLUSIVE REMEDY." (*Id.*)  The sole and exclusive remedy under the express warranty for an allegedly defective device is that Samsung will "repair or replace [the] product, at [its] option and at no charge with new or reconditioned parts, if [the product is] found to be defective during the limited warranty period." (*Id.*)

Plaintiff ignored Samsung's offer and instead filed suit on June 22, 2018.  (ECF No. 2.)[1]  Plaintiff filed the FAC on July 3, 2018, in response to this Court's Order to Show Cause Why Matter Should Not Be Dismissed For Lack of Jurisdiction.  (ECF No. 6.)

The gravamen of the FAC is that Samsung mispresented the POWERbot as "reliably" remotely operational through the use of Alexa or Samsung's Remote Applications.  Indeed, the FAC alleges **22 times** that the POWERbot does not work "reliably" as advertised.  (*See* FAC ¶¶ 16, 17, 35, 37, 46, 48, 55, 57, 65, 67, 79, 81, 93, 95, 105, 107, 117, 119.)

Plaintiff's allegations regarding Samsung's alleged false representations are as follows:

- The POWERbot "cannot reliably connect to" and is "not reliably remotely operable through the use of" Alexa, "as advertised" by Samsung (*id.* ¶ 17); (*see also id.* ¶¶ 35, 46, 55, 65, 79, 93, 107, 117);

- Samsung advertised the POWERbot as being "remotely operational through the use of, and compatible with" Alexa and the Remote Applications (FAC ¶ 11); (*see also id.* ¶¶ 12–13);

- The POWERbot's "remote functionality" and compatibility with Alexa and the Remote Applications "do[] not function as advertised by [Samsung]" (*id.*

---

[1]  Notably, Plaintiff did not bring suit under the CLRA and thus implicitly concedes that Samsung's offer to "resolve the issue" with his POWERbot, if there was any, is all the relief to which he could even arguably be entitled under the CLRA.  In order to facilitate early settlement of consumer cases, the CLRA requires that if, within 30 days after receiving a demand letter, a company offers "an appropriate correction, repair, replacement, or other remedy," "no action for damages may be maintained."  Cal. Civ. Code § 1782(b); *see also Benson v. S. California Auto Sales, Inc.*, 239 Cal. App. 4th 1198, 1206 (2015) ("The clear intent of the act is to provide and facilitate precomplaint settlements of consumer actions wherever possible").

¶¶ 14–15); (*see also id.* ¶ 18 (alleging that the POWERbot devices "do not have usable Samsung Connect, Smart Home, or Alexa features"));

- Samsung's Remote Applications "do not save credentials for users as advertised" (*id.* ¶¶ 16, 37, 48, 57, 67, 81, 95, 107, 119);

- The Remote Applications "only work[] on certain router bands (forcing users to change their home internet settings)" (*id.* ¶¶ 16, 37, 48, 57, 67, 81, 95, 107, 119);

- The Remote Applications "periodically delete[] [themselves] from the user's mobile device" (*id.* ¶¶ 16, 37, 48, 57, 67, 81, 95, 107, 119);

- The Samsung "Smart Hub" product "**may** improve the functionality of the POWERbot vacuums with the Samsung Connect or Smart Home iOS or Android applications," but Samsung "does not advertise that one needs to purchase the 'Smart Hub' in order to use the remote functionality features of the POWERbot" (*id.* ¶ 19); and

- "[T]he Samsung Connect and Samsung Smart Home applications do not reliably connect to Samsung's servers or the POWERbot device as advertised" (*id.* ¶¶ 16, 37, 48, 57, 67, 81, 95, 1 119).

Based on these alleged misrepresentations, the FAC asserts eight "Causes of Action": (1) FAL; (2) UCL; (3) unjust enrichment; (4) breach of implied warranty of fitness for a particular purpose; (5) breach of implied warranty of merchantability; (6) negligent misrepresentation; (7) intentional misrepresentation; and (8) strict liability.  Plaintiff seeks damages, attorneys' fees, and "an order enjoining Defendants to repair the remote operability and compatibility issues" with the POWERbot.  (*Id.*, Prayer, ¶¶ 1, 3.)

# III.   LEGAL STANDARD

## A.   Rule 12(b)(6) Requires Dismissal Of Claims Lacking Factual Or Legal Plausibility.

A court "need not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" when deciding a motion to dismiss.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  In particular, courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint" or subject to judicial notice.  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).  When reviewing a motion to dismiss, this Court may consider "documents crucial to the plaintiff's claims but not explicitly incorporated in a complaint" so as to "prevent a plaintiff from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based."  *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1158 (C.D. Cal. 2007) (citation omitted). Accordingly, and as explained in further detail in the accompanying Request for Judicial Notice, the CLRA correspondence and Samsung's express warranty may be considered by the Court in deciding this Motion.

## B.   Rule 9(B) Requires Plaintiff To Allege Misstatements With Particularity.

Rule 9(b) requires fraud to be pled with particularity "irrespective of whether the substantive law at issue is state or federal," and even where "fraud is not an essential element of a claim."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009) (citation omitted).  Where, as here, a complaint alleges "a unified course of fraudulent conduct" and "rel[ies] entirely on that course of conduct as the basis of that claim," its claims are grounded in fraud regardless of the label and Rule 9(b) applies.  *Id.* at 1125.[2]  Thus, Plaintiff's claims for violations of the FAL, UCL, intentional and negligent misrepresentation, and breach of

---

[2]   There is no genuine dispute that the FAC sounds in fraud.  Plaintiff alleges that Samsung "deliberately advertise[s] the POWERbot robotic vacuum cleaners" as being "compatible with the above-listed products, in order to compete with other high-end model vacuums." (FAC ¶ 13); (*see also id.* ¶¶ 11–12.)  Plaintiff also alleges that Samsung "knew, or through the exercise of reasonable care should have known, that the iOS and Android, and the Alexa compatibility features did not function as advertised."  (*Id.* ¶ 38); (*see also id.* ¶ 49 ("Defendants fraudulent, unfair, deceptive, untrue, and misleading advertising is likely to deceive the public . . . .").)

implied warranties, each of which sounds in fraud, are subject to the requirements of Rule 9(b).  *See Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 627–28 (N.D. Cal. 2011) (dismissing FAL, UCL, and misrepresentation claims where the plaintiff failed to allege the claims with specificity); *Harrington v. Daiso Japan*, No. 10-3876 SC, 2011 WL 2110764, at *4 (N.D. Cal. May 26, 2011) ("[T]o the extent that Plaintiffs' UCL, CLRA, and implied warranty claims are predicated on misrepresentation or other allegations of fraud, they fail Rule 9(b)'s heightened pleading standard as well").

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  These allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend the charge and not just deny that they have done anything wrong." *Segemen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Thus, the allegations must set forth "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation and internal quotation marks omitted).  The allegations must also set forth "what is false or misleading about a statement, and why it is false." *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *4 (N.D. Cal. Mar. 14, 2017).  In short, Rule 9(b) requires a party to plead the "who, what, when, where and how" of the alleged misrepresentations at issue.  *Kearns*, 567 F.3d at 1124.

## IV.   ARGUMENT

### A.   The FAL, UCL, Misrepresentation, And Implied Warranty Claims Fail Under Both Rule 12(b)(6) and Rule 9(b).

The gravamen of Plaintiff's case is that Samsung misrepresented the POWERbot's ability to "reliably" work via Alexa and the Remote Applications.  (*See* FAC ¶¶ 16, 17, 35, 37, 46, 48, 55, 57, 65, 67, 79, 81, 93, 95, 105, 107, 117, 119.)  However, advertising statements that a product "reliably" performs certain functions are not actionable as a matter of law.  No amount of artful pleading can cure this fundamental defect.  Accordingly, Plaintiff's FAL, UCL, misrepresentation, and implied warranty claims—all of which are tied

to a non-actionable "reliability" misrepresentation—should be dismissed with prejudice. To the extent Plaintiff seeks to recast his allegations as not depending on representations about "reliability" in order to avoid dismissal, his claims still fail under Rule 9(b).

### 1. Alleged Misstatements About The POWERbot's "Reliability" Are Not Actionable Under California Law.

All of the alleged misrepresentations set forth in the FAC are tied to a "reliability" statement, as discussed below, and are thus not actionable as a matter of law. Courts in this circuit have uniformly held that advertising statements that a product works "reliably" constitute non-actionable puffery. *See, e.g.*, *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) (collecting cases); *Beshwate v. BMW of N. Am.*, LLC, No. 1:17-CV-00417-SAB, 2017 WL 6344451, at *11 (E.D. Cal. Dec. 12, 2017) ("The word reliability is . . . non-actionable puffery."). "The word 'reliable' is inherently vague and general—in common parlance akin to a statement that the machine is 'fine.'" *Anunziato*, 402 F. Supp. 2d at 1140 (quoting *Summit Tech., Inc. v. High–Line Med. Instruments, Co.*, 933 F. Supp. 918, 931 (C.D. Cal. 1996)). As a result, a representation that a product is "reliable" is "incapable of objective verification" and thus not actionable, because it is "not expected to induce reasonable consumer reliance." *Id.*; *see also Summit*, 933 F. Supp. at 931 (dismissing claim where defendant stated that "used machines are 'perfectly reliable'").

For a representation to be actionable under California law, it must make a "specific and measurable claim, capable of being proved false or being reasonably interpreted as a statement of objective fact." *Vitt v. Apple Comput., Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012). "Generalized, vague, and unspecified assertions [about a product] constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Anunziato*, 402 F. Supp. 2d at 1139 (quoting *Glen Holly Ent., Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003)); *see also Summit*, 933 F. Supp. at 931 (noting that "[s]ubjective claims about products, which cannot be proven either true or false, are not actionable" under the federal false advertising statute) (citation omitted).

Where, as here, a claim is based on a representation about a product's reliability,

dismissal is appropriate at the pleading stage. *See, e.g.*, *Anunziato*, 402 F. Supp. 2d at 1140 (dismissing FAL and UCL claims based on the term "reliable"); *Summit*, 933 F. Supp. at 931 (dismissing Lanham Act false advertising claim based on reliability representation); *Beshwate*, 2017 WL 6344451, at *11 (dismissing "claim for misrepresentation based upon [the defendant's] statements as to the reliability of [its] vehicles"); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 855 (N.D. Cal. 2012) ("The Court agrees with Defendants that the alleged statements are non-actionable puffery. Generalized advertisements that a computer is 'ultra-reliable' or 'packed with power' say nothing about the specific characteristics or components of the [product]."); *Sumer v. Carrier Corp.*, No. 14-CV-04271, 2015 WL 758314, at *2 (N.D. Cal. Feb. 20, 2015) ("Carrier's general statements about the reliability and quality of its evaporator coils are non-actionable puffery."); *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 WL 2994812, at *6–7 (N.D. Cal. July 27, 2007) (statements that laptops were a "reliable mobile computing solution" and "allow the user to 'do more on the move' [were] generalized, non-actionable puffery, because a reasonable consumer would not have relied on such vague statements in making purchasing decisions"), *aff'd*, 316 F. App'x 585 (9th Cir. 2009).

The *Summit* decision is instructive. There, the plaintiff, an ophthalmological laser systems manufacturer, sued another company that imported and resold used versions of its laser system. *Summit*, 933 F. Supp. at 924–26. The plaintiff alleged that the importer made "numerous false or misleading statements" about its system (*id.* at 925), including an express statement that "a perfectly reliable used" laser system could be purchased from the defendant for almost half the price of a new unit and function just the same (*id.* at 930). The plaintiff alleged this particular statement was false and misleading because a "lack of proper installation, service, testing, parts and gas means they are not reliable." *Id.* at 931. The court held that the representation about the reliability of the used laser machines was "mere puffery," and thus, non-actionable as a matter of law. *Id.* The court reasoned that "[t]he word 'reliable' is inherently vague and general . . . ." *Id.* As a result, the court determined— at the motion to dismiss stage—that advertising a product as "reliable" is a "claim incapable

1    of objective verification and not expected to induce reasonable consumer reliance," and

2    dismissed the plaintiff's false advertising claims. *Id.* (citations omitted).

3        Compared to the "reliability" allegations in *Summit*, Plaintiff's allegations are even

4    more deficient. Plaintiff does not allege that Samsung advertised its POWERbots as

5    "perfectly" reliable or remotely operable 100% of the time. Instead, Plaintiff's claims hinge

6    on the allegation that Samsung advertised its POWERbot as having some unspecified degree

7    of "reliability." (*See, e.g.*, FAC ¶¶ 16–17, 32–33, 43–44.) Such vague representations

8    cannot be independently verified or expected to induce consumer reliance. They are thus

9    non-actionable, vague statements that constitute mere puffery.

10        All of the alleged misrepresentations in the FAC (*supra*, pp. 5–6) are tied to an alleged

11    "reliability" statement. Even the alleged misrepresentations that do not expressly use the

12    word "reliable" are premised on the same "reliability" representation when read in context.

13    For example, Plaintiff's allegation that the "remote functionality" and "compatibility"

14    features "do[] not function as advertised by [Samsung]" (FAC ¶¶ 14–15) are tied to a

15    "reliability" representation as shown by other allegations confirming that the "as advertised"

16    refers to "reliable" (*see* FAC ¶¶ 16–17). Indeed, Plaintiff's case depends on the allegation

17    the POWERbot's features *are* functional and usable *sometimes*, just not on a "reliable" basis.

18    (*See* FAC ¶¶ 16–17, 32–33, 43–44.) Plaintiff cannot plausibly allege that any of the

19    POWERbot's features do not work *at all* because his CLRA letter confirms that he

20    "mange[d] to link his vacuum" to Remote Applications (without the assistance of the Smart

21    Hub). (RJN, Exh. 2.) As such, all of the alleged false statements are non-actionable because

22    they are either explicitly, or by necessary implication, tied to alleged representations that the

23    POWERbot's features are "reliable."

24        Accordingly, Plaintiff's FAL, UCL, misrepresentation, and implied warranty claims

25    should be dismissed with prejudice.[3] Plaintiff cannot cure this fundamental defect in the

26    _____

27    [3]  Courts regularly dismiss FAL, UCL, misrepresentation and implied warranty claims at
the pleading stage where the plaintiff failed to allege the product manufacturer made an

28    actionable misrepresentation. *See, e.g.*, *Fisher v. Monster Beverage Corp.*, 125 F. Supp. 3d
1007, 1028 (C.D. Cal. 2013) (dismissing implied warranty claims because statements that
product did "not conform to the 'container's promises or affirmations'" were "non-

FAC through a good faith amendment because "reliability" pervades each of the alleged misrepresentations. Thus, this Court should deny leave to amend given that "other facts consistent with the challenged pleading could not possibly cure the deficiency[.]" *Alvarez v. Chevron Corp.*, 656 F.3d 925, 935 (9th Cir. 2011) (affirming trial court's dismissal without leave to amend under Rule 12(b)(6)).

### 2. To The Extent Plaintiff Attempts To Recast Allegations As Not Being Tied To A "Reliability" Representation, They Fail Rule 9(b).

Faced with the overwhelming authority holding that "reliability" is not an actionable misrepresentation, any attempt by Plaintiff to salvage his claims by cherry-picking certain alleged misrepresentations and divorcing them from a "reliability" representation will be futile because the FAC falls woefully short of Rule 9(b)'s heightened pleading requirements.

Tellingly, in a FAC spanning more than 20 pages, Plaintiff does not identify any actual marketing materials from Samsung containing any of the alleged misstatements, the specific misstatements or advertisements from Samsung that Plaintiff reviewed, or even where Plaintiff reviewed Samsung's advertisements or alleged representations (*e.g.*, on Samsung's website, product packaging, or point of sale displays). Indeed, Plaintiff fails to even allege when he reviewed Samsung's alleged advertisements (including if it was before his purchase of the POWERbot) and which particular representations he found to be material and that he relied on in making his purchasing decision.

Thus, "[i]n the absence of any allegations that Plaintiff[] encountered a representation made by Defendant—let alone what those representations were, when they were made, why they were false, and whether they affected his purchasing decision—Plaintiff[] [has] failed to plead with particularity any affirmative misrepresentation claim." *Davidson*, 2017 WL 976048, at *8; *see also Kearns*, 567 F.3d at 1126 (dismissing claims under Rule 9(b) because

---

actionable puffery"), *aff'd in part, rev'd in part on other grounds*, 656 F. App'x 819 (9th Cir. 2016); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *12 (N.D. Cal. June 5, 2009) (dismissing intentional and negligent misrepresentation claims because "statements amounting to mere puffery are not actionable"); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (dismissing FAL and UCL claims because "generalized and vague statements of product superiority" were non-actionable puffery"), *aff'd*, 322 F. App'x 489 (9th Cir. 2009).

plaintiff did not "specify what the television advertisements or other sales material specifically state" and "when he was exposed to them or which ones he found material"); *Wang*, 276 F.R.D. at 627–28 (dismissing claims where plaintiff failed to allege with specificity which representations he reviewed, found material, and relied on, and when he did so); *Palmer v. Apple Inc.*, Case No. 5:15-cv-05808-RMW, 2016 WL 1535087, at *5 (N.D. Cal. Apr. 15, 2016) (holding that allegations were insufficient to state a claim under Rule 9(b) where the plaintiff did not allege "which specific advertisements or statements he personally saw or when they were made" or "how those statements were false").

For instance, in the context of the Remote Applications, Plaintiff has not identified a single instance where Samsung affirmatively represented that the Remote Applications "save credentials" or are designed to "work[] on certain router bands." Nor has Plaintiff identified when he saw such statements, where he saw them, or why he found them to be material. Similarly, Plaintiff alleges in conclusory fashion that Samsung affirmatively advertised the POWERbot as being "remotely operational through the use of, and compatible with" Alexa and the Remote Applications (FAC ¶ 11; *see also id.* ¶¶ 12–13), but that those features "do[] not function as advertised by [Samsung]" (*id.* ¶¶ 14–15). (*See also id.* ¶ 18) (alleging that the POWERbot devices "do not have usable Samsung Connect, Smart Home, or Alexa features".) These allegations do not come close to satisfying the heightened pleading requirements of Rule 9(b). Not only does Plaintiff fail to identify a single Samsung advertisement containing these representations, Plaintiff has not alleged when he saw such statements (including whether it was before his purchase) or where he saw such statements.

In sum, to the extent that Plaintiff attempts to recast the allegations in the FAC as being independent of any "reliability" representations (they are not), Plaintiff's claims nonetheless fail under Rule 9(b). Plaintiff fails to identify with particularity, among other things, (i) any statement by Samsung that he reviewed and relied upon, much less a false one, (ii) who made the statement(s), (iii) when such statement(s) were made, and (iii) how he reasonably relied upon such statement(s). Any of these defects standing alone is fatal to Plaintiff's FAL, UCL, misrepresentation, and implied warranty claims.

**B.    Plaintiff's UCL Claim Fails For The Additional Reason That Plaintiff Does Not Allege Conduct That Is Unlawful, Unfair, or Fraudulent.**

Plaintiff's UCL claim also fails because he does not allege that Samsung committed any unlawful, unfair, or fraudulent conduct.  The UCL provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."  Cal. Bus. & Prof. Code § 17200.  "Although the unfair competition law's scope is sweeping, it is not unlimited." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 541 (Cal. 1999).  "California's UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1204 (N.D. Cal. 2014).

Plaintiff does not allege that any of Samsung's advertising practices are "unlawful" as defined under the UCL.  (*See* FAC ¶ 49.)  Plaintiff attempts to state a claim under the unfair and fraudulent prongs by parroting words from the statute in alleging that Samsung's "advertising campaign" is "fraudulent, unfair, deceptive, untrue, and misleading." (FAC ¶ 49.)  Not only does Plaintiff fail to sufficiently plead the UCL's "fraudulent" prong as set forth above (Section IV.A.1–2), he also fails to sufficiently allege any predicate "unfair conduct" by Samsung.

Plaintiff vaguely alleges that Samsung's purported conduct is "unfair" within the meaning of the UCL, but the FAC is wholly devoid of specific factual allegations on the subject.  Although the UCL does not define the term "unfair," California courts have developed at least two tests for "unfairness" within the meaning of the statute: "(1) the tethering test, which requires that the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions, . . . and (2) the balancing test, which examines whether the challenged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . ." *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145–46 (N.D. Cal. 2013) (internal citations

1    and quotations omitted).  Plaintiff does not state a claim under either test.

2           Under the first test, Plaintiff must allege that Samsung's purported conduct violated

3    a public policy that is "tethered" to specific constitutional, regulatory, or statutory

4    provisions.  *See Herskowitz*, 940 F. Supp. 2d at 1145.  That "tethering" is necessary because

5    "[c]ourts may not simply impose their own notions of the day as to what is fair or unfair."

6    *Cel-Tech.*, 973 P.2d at 541.  Plaintiff does not even attempt to base his claim on any public

7    policy.  (*See* FAC ¶ 49.)

8           The second test "examines whether the challenged business practice is 'immoral,

9    unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the

10   court to weigh the utility of the defendant's conduct against the gravity of the harm to the

11   alleged victim.'"  *Herskowitz*, 940 F. Supp. 2d at 1145–46 (citation and internal quotation

12   marks omitted).  Under that test, courts examine the practice's impact on its alleged victim

13   and balance that impact against the reasons, justifications, and motives of the alleged

14   wrongdoer.  *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).  Further,

15   where the alleged "unfair" business practice sounds in fraud, "the pleading must satisfy the

16   heightened standard of Rule 9(b)" in order to satisfy the "balancing test."  *Backhaut v. Apple,*

17   *Inc.*, 74 F. Supp. 3d 1033, 1051 (N.D. Cal. 2014) (holding that plaintiff failed to satisfy the

18   "balancing test" where it "failed to plead the details of Apple's alleged fraudulent conduct

19   with sufficient particularity and failed to plead actual reliance").

20          Here, Plaintiff's allegations of Samsung's supposedly "unfair" practices rely on

21   Samsung's alleged fraudulent conduct as the basis of his claim.  (*See* FAC ¶¶ 41–49.)  As

22   detailed above (Section IV.A.2), Plaintiff does not even attempt to allege the "who, what,

23   when, where, and how" of Samsung's alleged fraudulent conduct.  *See Kearns*, 567 F.3d at

24   1125–27.  Thus, without sufficient allegations of wrongdoing, Plaintiff has not identified

25   any Samsung conduct that is "immoral, unethical, oppressive, unscrupulous or substantially

26   injurious to consumers" and thus fails to adequately allege any "unfair" business practice by

27   Samsung. *See Palmer*, 2016 WL 1535087, at *7 ("Without additional allegations of

28   wrongdoing, it is hard to see how Apple's failure to disclose the details of how the iPhone 5

Rutan & Tucker, LLP
*attorneys at law*

switched off its Wi-Fi capability to improve battery life was 'immoral, unethical, oppressive, or unscrupulous").

Accordingly, Plaintiff's UCL claim should be dismissed on this additional ground.

**C.     Plaintiff's Claims For Breach Of Implied Warranty Fail For Several Reasons.**

Even though no additional grounds are needed to dismiss the implied warranty claims, these claims independently fail for the following three reasons:  (i) Plaintiff has not alleged (and never could allege) that Samsung did not honor the exclusive remedy set forth in the express warranty; (ii) Plaintiff has not alleged that he purchased his POWERbot directly from Samsung and, thus, cannot satisfy the requirement of vertical contractual privity; and (iii) for the breach of the implied warranty of fitness for a particular purpose claim, Plaintiff has not alleged a "particular purpose" for the POWERbot beyond its ordinary purpose as a remotely-operable robotic vacuum.

**1.     Plaintiff Cannot Plead That Samsung Failed To Honor The Exclusive Remedy Set Forth In The Express Warranty As Required To State A Claim for Breach Of Implied Warranty.**

Plaintiff cannot state a claim for breach of implied warranty because he disregarded the express warranty and Samsung's offer to resolve any issues with his POWERbot pursuant to its terms.

Plaintiff's POWERbot is covered by an express warranty that provides Plaintiff his sole and exclusive remedy.  Under the California Commercial Code, if a remedy "is expressly agreed to be exclusive . . . it is the sole remedy."  Cal. Com. Code § 2719(1)(b); *see also* Cal. Com. Code § 2719(1)(a) ("The agreement may . . . limit or alter the measure of damages recoverable under this division, as by limiting the buyer's remedies to . . . repair and replacement of nonconforming goods or parts").

Samsung's express warranty for Plaintiff's POWERbot provides that "this limited warranty covers manufacturing defects in materials and workmanship encountered in normal, noncommercial use of [the] product."  (RJN, Exh. 1.)  Contrary to Plaintiff's allegations that Samsung represents the POWERbot as working "reliably," the express

1   warranty states that "SAMSUNG does not warrant uninterrupted or error-free operation of

2   the product." (*Id.*)    Additionally, the express warranty states that "THIS LIMITED

3   WARRANTY . . . STATES YOUR EXCLUSIVE REMEDY." (*Id.*)   Thus, the sole and

4   exclusive remedy is that Samsung will "repair or replace [the] product, at [its] option and at

5   no charge with new or reconditioned parts, if [the product is] found to be defective during

6   the limited warranty period." (*Id.*)

7        Where, as here, an express warranty limits available remedies, a plaintiff can only

8   state a claim breach of implied warranty when the defendant failed to comply with the terms

9   of the express warranty. *See Galitski v. Samsung Telecomm. Am., LLC*, No. 12–cv–04782,

10  2013 WL 6330645, at *9 (N.D. Tex. Dec. 5, 2013) (applying California law and dismissing

11  implied warranty claims "because plaintiffs do not plausibly allege that . . . Samsung failed

12  to repair or replace their defective phones—the only remedies available under the terms of

13  Samsung's [express] warranty"); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1020 (N.D. Cal.

14  2014) (dismissing implied warranty claim because plaintiff "has not alleged that [defendant]

15  refused to repair or replace his device during the applicable warranty period").

16       Plaintiff omits any mention of the express warranty, or Samsung's offer to "resolve

17  the issue" with his POWERbot, if there was one, because the actual facts negate his implied

18  warranty claims.  Plaintiff, of course, also fails to mention that he ignored Samsung's offer

19  to "resolve the issue" so that he could instead bring this lawsuit seeking damages and

20  attorneys' fees.  As discussed more fully in the Request for Judicial Notice, courts permit

21  judicial notice of such documents in order to prevent parties from using artful pleading to

22  assert unmeritorious claims such as these. *See, e.g.*, *Birdsong v. AT&T Corp.*, No. C12-6175

23  TEH, 2013 WL 1120783, at *2 (N.D. Cal. Mar. 18, 2013) ("A plaintiff's failure to refer to

24  such documents rais[es] the spectre that plaintiff failed to incorporate them by reference in

25  the complaint as a means of avoiding Rule 12(b)(6) dismissal") (alteration in original;

26  internal quotation marks omitted); *Wet Seal*, 518 F. Supp. 2d at 1158 (court may consider

27  "documents crucial to the plaintiff's claims but not explicitly incorporated in a complaint"

28  so as to "prevent a plaintiff from surviving a Rule 12(b)(6) motion by deliberately omitting

references to documents").[4]  Based on the forgoing, the express warranty bars Plaintiff's claims for breach of implied warranty because Plaintiff cannot allege Samsung failed to comply with its terms.

### 2. Plaintiff Fails To Allege Vertical Privity With Samsung As Required To State A Claim For Breach Of Implied Warranty.

Putting aside Plaintiff's inability to plead around the express warranty, both of Plaintiff's implied warranty claims still fail for a lack of contractual privity with Samsung.

"The general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." *Burr v. Sherwin Williams Co.*, 268 P.2d 1041, 1048 (Cal. 1954); *see also All W. Elecs., Inc. v. M-B-W, Inc.*, 64 Cal. App. 4th 717, 725 (1998) ("Privity of contract is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability"); *McCarty v. Johnson & Johnson*, No. 10-cv-350-OWW–DLB, 2010 WL 2629913, at *6 (E.D. Cal. June 29, 2010) (noting that "[u]nder California law, privity between parties is required for either claim of implied warranty").  Thus, plaintiffs must plead that "they are in adjoining links of the distribution chain" with the defendant to state a claim for breach of the implied warranty of merchantability or fitness. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) ("A lack of vertical privity requires the dismissal of [Plaintiff's] implied warranty claims.").

For Plaintiff to satisfy the vertical privity requirement, Plaintiff must allege that he purchased his POWERbot directly from Samsung, not from a retailer such as Amazon or a brick-and-mortar store.  Because Plaintiff does not allege from whom he purchased his POWERbot, let alone that he purchased it directly from Samsung, his claim should be dismissed.  *See Park-Kim v. Daikin Indus., Ltd.*, No. 215CV09523CASKKX, 2016 WL

---

[4]  A plaintiff's intentional omission of material facts from a complaint can carry the same consequences as affirmatively misstating facts in a pleading.  *See Lamon v. Amrheign*, No. 1:12-CV-00296-AWI-GS, 2014 WL 3940286, at *6, n.1 (E.D. Cal. Aug. 12, 2014) ("Plaintiff is cautioned that the intentional omission of material facts in a pleading constitutes a falsehood and may result in the imposition of sanctions under Rule 11").

1  5958251, at *16 (C.D. Cal. Aug. 3, 2016) (dismissing breach of the implied warranty of

2  merchantability and fitness claims "due to a lack of any allegations regarding privity").

3     **3. Plaintiff Fails To Allege A Particular Purpose As Required To State A Claim For Breach Of The Implied Warranty Of Fitness For A Particular Purpose.**

4

5    Even though Plaintiff's claim for breach of the implied warranty of fitness for a

6  particular purpose fails because of the express warranty and the lack of vertical privity,

7  Plaintiff's claim fails for yet another reason—Plaintiff does not allege a "particular purpose"

8  for the POWERbot beyond its ordinary purpose of a remotely operable vacuum cleaner.

9    Under California law, a claim for breach of the implied warranty of fitness for a

10 particular purpose requires that: (i) the buyer intended to use the product for a particular

11 purpose; (ii) the seller had reason to know this; (iii) the buyer relied on the seller's judgment

12 to select suitable goods for that purpose; (iv) the seller had reason to know that the buyer

13 was relying on seller in this way; and (v) the product failed to suit buyer's purpose and

14 subsequently damaged the buyer.  *Keith v. Buchanan*, 173 Cal. App. 3d 13, 25 (1985).  "A

15 particular purpose differs from the ordinary purpose for which the goods are used in that it

16 envisages a specific use by the buyer which is peculiar to the nature of his business whereas

17 the ordinary purposes for which goods are used are those envisaged in the concept of

18 merchantability and go to uses which are customarily made of the goods in question."  *Am.*

19 *Suzuki Motor Corp. v. Super. Court*, 37 Cal. App. 4th 1291, 1295 n.2 (1995) (internal

20 quotation marks omitted).

21   To state a claim for breach of the implied warranty of fitness for a particular purpose,

22 the plaintiff must, at a minimum, identify a particular purpose for which he obtained the

23 product at issue.  *See Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 WL 989742,

24 at *8 (N.D. Cal. Mar. 11, 2014) (granting motion to dismiss claim for breach of implied

25 warranty of fitness for a particular purpose: "[P]laintiff has identified no particular purpose

26 for which she purchased the washing machine.  She purchased it to wash her laundry, which

27 is the ordinary purpose of a washing machine." (internal quotation marks omitted)); *Kent v.*

28 *Hewlett-Packard Co.*, No. 09-5341 JF PVT, 2010 WL 2681767, at *5 (N.D. Cal. July 6,

2010) ("Plaintiffs have not alleged that they used the computers . . . for anything other than their ordinary purpose.  Thus, plaintiffs have not stated a claim for breach of an implied warranty for a particular purpose").

The FAC contains no allegations about Plaintiff's intended purpose for his POWERbot, nor does Plaintiff allege he communicated any such purpose to Samsung. Plaintiff also fails to allege that he relied on Samsung's judgment to select a product suitable for his unstated purpose.  In fact, there is no allegation that Samsung knew anything about Plaintiff before receiving his attorneys' CLRA demand.  Plaintiff's claims for breach of the implied warranty of merchantability and fitness for a particular purpose should be dismissed.

### D. Plaintiff's Strict Liability Claim Is Barred By The Economic Loss Doctrine.

Plaintiff's strict liability claim fails because the economic loss doctrine bars a plaintiff from pursuing strict liability claims where, as here, the plaintiff does not allege physical harm to himself or a different product.

Under California law, a plaintiff cannot assert a strict liability claim against the product seller where the plaintiff's only alleged losses are purely economic.  *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 272 (Cal. 2004) ("Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses"). "[T]he economic loss rule allows a plaintiff to recover in strict products liability in tort when a product defect causes [personal injury or] damage to 'other property,' that is, property *other than the product itself*." *Jimenez v. Super. Court*, 58 P.3d 450, 456 (Cal. 2002); *see also Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013, 1019 (S.D. Cal. 2011) (granting motion to dismiss because plaintiff "fail[ed] to allege physical injury or damage to other property" other than the defective television).

The economic loss rule bars Plaintiff's strict liability claim.  Plaintiff does not allege that his allegedly defective POWERbot caused Plaintiff or his property any physical harm. His only allegation about harm with regard to his strict liability claim is that "the design or

1    manufacturing defects associated with the lack of compatibility and remote operability of

2    the POWERbot line of vacuums" caused him "material harm."  (FAC ¶ 120.)  The only

3    "material harm" Plaintiff identifies is that Samsung "improperly induc[ed] consumers to

4    purchase the devices despite the devices' defects."  (*Id.*)  This is purely economic harm and

5    not recoverable under a strict liability theory.  *Jimenez*, 58 P.3d at 456.  Accordingly,

6    Plaintiff's strict liability claim must be dismissed.

7    **E.     Plaintiff's Unjust Enrichment "Claim" Must Be Dismissed Because It Is**
         **Not An Independent Claim For Relief, Is Duplicative, And Is Barred By**
8        **The Express Warranty.**

9           Plaintiff's unjust enrichment claims fails for three independent reasons.

10          *First*, unjust enrichment is a general principle of law, not a cause of action.  *Carlin v.*

11   *DairyAmerica, Inc.*, 978 F. Supp. 2d 1103, 1118 (E.D. Cal. 2013) (recognizing that "[u]nder

12   California law, [u]njust enrichment is not a cause of action . . . or even a remedy, but rather

13   a general principle, underlying various legal doctrines and remedies" and dismissing unjust

14   enrichment claim at the pleading stage (internal citation and quotation marks omitted));

15   *Jogani v. Super. Court*, 165 Cal. App. 4th 901, 911 (2008) (unjust enrichment is not a

16   separate cause of action under California law, but rather "a general principle underlying

17   various doctrines and remedies, including quasi-contract").

18          *Second*, the unjust enrichment claim is duplicative of the FAL, UCL, and

19   misrepresentation claims, and a plaintiff "cannot assert unjust enrichment claims that are

20   merely duplicative of statutory or tort claims."  *In re Apple & AT&T iPad Unlimited Data*

21   *Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011); *see also Musgrave v. ICC/Marie*

22   *Callender's Gourmet Prod. Div.*, No. 14-CV-02006-JST, 2015 WL 510919, at *10 (N.D.

23   Cal. Feb. 5, 2015) (dismissing unjust enrichment claim with prejudice where it was

24   "duplicat[ive] [of] [p]laintiff's other statutory and common law claims").  The unjust

25   enrichment claim here is premised upon the same allegedly false statements as the FAL,

26   UCL, and misrepresentation claims.  (*See* FAC ¶¶ 50–59 (alleging that the POWERbots "do

27   not reliably connect to" Alexa or the Remote Applications, and "are not reliably remotely

28   operable through the use of" Alexa or the Remote Applications).)

1   *Third*, a claim for unjust enrichment "does not lie when an enforceable, binding

2   agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital*

3   *Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).  As set forth in Section IV.C.1., a valid express

4   warranty exists between the Plaintiff and Samsung, which covers the subject matter at issue

5   and bars the unjust enrichment claim.

6   **F.   Plaintiff's Prayer For Injunctive Relief Should Be Stricken Because He**
    **Cannot Satisfy The Article III Standing Requirement and Because He**

7   **Ignored Samsung's Offer To Provide Him The Same Relief He Seeks**
    **Through An Injunction.**

8

9   The Court should strike Plaintiff's prayer for injunctive relief because Plaintiff cannot

10  satisfy the Article III standing requirement and because Plaintiff ignored Samsung's offer to

    do that which he now seeks by way of an injunction.

11

12  To satisfy Article III's standing requirements, a plaintiff seeking injunctive relief

13  must demonstrate "that he has suffered or is threatened with a concrete and particularized

14  legal harm . . . coupled with a sufficient likelihood that he will again be wronged in a similar

15  way." *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007) (internal quotations and citations

16  omitted).  The alleged threat cannot be "conjectural" or "hypothetical." *City of Los Angeles*

17  *v. Lyons*, 461 U.S. 95, 101–02 (1983).  Moreover, "[p]ast exposure to illegal conduct does

18  not in itself show a present case or controversy regarding injunctive relief . . . if

19  unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S.

20  488, 495–96 (1974).  "[W]here a plaintiff seeks prospective injunctive relief he must

21  demonstrate that he is realistically threatened by a repetition of [the violation]." *Winkleman*

22  *v. CDCR*, No. 2:13-CV-1480 MCE DAD, 2015 WL 222542, at *3 (E.D. Cal. Jan. 14, 2015)

23  (internal quotation marks and citation omitted), *report and recommendation adopted*, No.

24  2:13-CV-1480 MCE DAD, 2015 WL 1119677 (E.D. Cal. Mar. 11, 2015).

25  "In cases involving false or misleading product advertising, 'where a plaintiff has no

26  intention of purchasing the product in the future, a majority of district courts have held that

27  the plaintiff has no standing to seek prospective injunctive relief.'" *Davidson*, 2017 WL

28  976048, at *6 (citation omitted).  There is demonstrably no harm because Samsung has

Rutan & Tucker, LLP
*attorneys at law*

already offered to stand behind its warranty. (*See* RJN, Exh. 4 (stating that if "there actually is a problem with the product," Samsung will "resolve the issue . . . .").) Thus, the injunctive relief claim must be dismissed for lack of standing. *Mason v. Nature's Innovation, Inc.*, No. 12-cv-3019 BTM (DHB), 2013 WL 1969957, at *5 (S.D. Cal. May 13, 2013) ("as important as consumer protection is, it is not within the Court's authority to carve out an exception to Article III's standing requirements to further the purpose of California consumer protection laws").

Moreover, there is no need for injunctive relief because there is no risk Plaintiff would buy a POWERbot he believes to be unreliable. *See, e.g.*, *Hunter v. Nature's Way Prods., LLC*, No. 16-cv-532-WQH, 2016 WL 4262188, at *13 (S.D. Cal. Aug. 12, 2016) ("These allegations support an inference that now that Plaintiffs are aware of the alleged misrepresentations on the coconut oil labels, Plaintiffs will not purchase the products in the future."); *Doe v. Skyway House, Inc.*, No. 2:16-CV-00627-TLN-CMK, 2017 WL 2984878, at *4 (E.D. Cal. July 13, 2017) (granting motion to dismiss where the plaintiff did not "show she is realistically threatened by a repetition of the violations to have standing to seek injunctive relief." (internal quotation marks omitted)).

Additionally, principles of equity prevent Plaintiff from coming to this Court seeking the same relief that Samsung already offered to him and which he ignored. *See Hunt v. Rousmanier's Adm'rs*, 21 U.S. 174, 190 (1823) ("no man is entitled to the aid of a Court of equity, when the necessity of resorting to that Court is created by his own fault"); 2 Cal. Affirmative Def. § 45:22 (2d ed.) ("[T]he doctrine that he who seeks equity must do equity means that the party asking the aid of the court must stand in conscientious relation towards his adversary; that the transaction from which his claim arises must be fair and just and that the relief itself must not be harsh and oppressive upon the defendant."). Plaintiff is not entitled to an injunction ordering Samsung to do that which Samsung already offered and Plaintiff ignored in favor of bringing a putative class action for damages and attorneys' fees. The Court should strike the prayer for injunctive relief accordingly. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial,

1   impertinent, or scandalous matter").[5]

2   ## V.       __CONCLUSION__

3          For the foregoing reasons, Samsung respectfully requests that this Court grant its

4   Motion and dismiss the FAC in its entirety and with prejudice for failure to state a claim.

5   Dated:  August 28, 2018                    RUTAN & TUCKER, LLP

6

7                                          By:        /s/ Michael D. Adams

8                                                 Michael D. Adams
                                                Attorneys for Defendant
                                                SAMSUNG ELECTRONICS
9                                                 AMERICA, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

27   [5]   Further, to the extent Plaintiff attempts to plead a separate claim for injunctive relief (as opposed to seeking injunctive relief as a remedy), any such claim is inappropriate because "[a]n injunction is a remedy, not a separate claim or cause of action. . . . [A] separately pled

28   claim or cause of action for injunctive relief is inappropriate." *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010).