UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL KERKORIAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendant. | No. 1:18-cv-00870-DAD-SKO<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. No. 13) |

This matter is before the court on a motion to dismiss brought on behalf of defendant Samsung Electronics America, Inc. ("Samsung" or "defendant"). (Doc. No. 13.) A hearing on the motion was held on October 2, 2018.[1] Attorney Christopher Nichols appeared telephonically for plaintiff Paul Kerkorian, individually and on behalf of all others similarly situated ("plaintiff"). Attorney Michael Adams appeared for defendant. Having reviewed the parties'

---

[1] The undersigned apologizes for the delay in the issuance of this order. This court's overwhelming caseload has been well publicized and the long–standing lack of judicial resources in this district is about to reach crisis proportion. *See See* Lawrence J. O'Neill, et al, *An Important Letter to Congress from the Judges of the Eastern District of California Regarding Our Caseload Crisis*, (June 19, 2018) http://www.caed.uscourts.gov/caednew/index.cfm/news/important-letter-re-caseload-crisis/. Unfortunately, that situation sometimes results in a submitted matter being overlooked for a period of time and that has occurred here with respect to this motion.

1

briefing and heard oral argument, and for the reasons set forth below, the court grants defendant's motion to dismiss with leave to amend.

**BACKGROUND**

Plaintiff's first amended complaint, (Doc. No. 8 ("FAC")), alleges as follows. Samsung sells a line of "smart" remotely-operable, robotic vacuum cleaners called POWERbots. (*Id.* at ¶ 2.) Plaintiff purchased a POWERbot model SR1AM7040WG on or around January 18, 2018. (*Id.* at ¶ 1.) Samsung advertises its POWERbot as "reliably" working with Amazon's Alexa as well as iOS and Android devices through two smartphone applications called Samsung Connect and Smart Home (collectively referred to as the "Remote Applications"). (*Id.* at ¶ 11.)

According to plaintiff, the POWERbot does not work as advertised in several ways. Although Samsung advertised the POWERbot as "reliably" remotely operational through the use of Alexa or Samsung's Remote Applications, the POWERbot "cannot reliably connect to" and is "not reliably remotely operable through the use of" Alexa, "as advertised" by Samsung. (*Id.* at ¶¶ 16, 17.) Additionally, the POWERbot's "remote functionality" and compatibility with Alexa and the Remote Applications "do[] not function as advertised by [Samsung]." (*Id.* at ¶¶ 14–15; *see also id.* at ¶ 18) (alleging that the POWERbot devices "do not have usable Samsung Connect, Smart Home, or Alexa features.") Samsung's Remote Applications also "do not save credentials for users as advertised." (*Id.* at ¶ 16.) The Remote Applications "only work[] on certain router bands (forcing users to change their home internet settings)," "periodically delete[] [themselves] from the user's mobile device," and do not "reliably connect to Samsung's servers or the POWERbot device as advertised." (*Id.*) Lastly, Samsung's "Smart Hub" product "may improve the functionality of the POWERbot vacuums with the [Remote Applications]," but Samsung "does not advertise that one needs to purchase the 'Smart Hub' in order to use the remote functionality features of the POWERbot." (*Id.* at ¶ 19.)

Plaintiff filed suit on June 22, 2018. (Doc. No. 2.) In response to this court's order to show cause why this matter should not be dismissed for lack of jurisdiction, (Doc. No. 6), plaintiff filed the FAC on July 3, 2018. The FAC asserts eight causes of action: (1) False Advertising under California Business and Professional Code § 17500 ("false advertising law");

(2) Unfair Business Practices under California Business and Professional Code § 17200 ("UCL"); (3) unjust enrichment; (4) breach of implied warranty of fitness for a particular purpose; (5) breach of implied warranty of merchantability; (6) negligent misrepresentation; (7) intentional misrepresentation; and (8) strict liability. Plaintiff seeks damages, attorneys' fees, and "an order enjoining Defendant to repair the remote operability and compatibility issues" with the POWERbot. (*Id.* at 21–22.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws

in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A complaint alleging fraud, as does the plaintiff's, must satisfy heightened pleading requirements. Fed. R. Civ. P. Rule 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word fraud is not used)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotations omitted). "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Under Rule 9(b), the "circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of its particular misconduct . . . so they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124 (internal quotations omitted) (citing *Bly-Magee*, 236 F.3d at 1019). To satisfy the particularity standard of Rule 9(b), the plaintiff "must set forth *more* than the neutral facts necessary to identify the transaction" at issue. *Id.* (internal quotations omitted) (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011)); *see also Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (internal quotations omitted).

**DISCUSSION**

**A.      Request for Judicial Notice**

As a preliminary matter, the court first considers defendants' request for judicial notice. (Doc. No. 14.) Specifically, defendant requests that judicial notice be taken of the following documents: (1) the express warranty for the Samsung POWERbot model (SR1AM7040WG) purchased by plaintiff, which is available on Samsung's website; (2) plaintiff's April 16, 2018

4

letter to Samsung pursuant to the California Legal Remedies Act (the "CLRA Letter"), which is referenced by plaintiff in paragraphs 71 and 85 of the FAC; (3) Samsung's initial response to plaintiff's CLRA Letter, dated May 17, 2018; (4) Samsung's second response to plaintiff's CLRA Letter, dated May 22, 2018 (collectively with Samsung's May 17, 2018 response letter, the "CLRA Response Letters"). (*Id.* at 2.)

Ordinarily, the court considers only the complaint and attached documents in deciding a motion to dismiss; however, the court may also take judicial notice of matters of public record without converting the motion into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Pursuant to the Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Here, defendant requests judicial notice "because the viability of plaintiff's claims for breach of implied warranties hinge on the existence and terms of the express warranty and Samsung's efforts to honor the remedies provided therein." (Doc. No. 14 at 5.) The court does not consider plaintiff's breach of implied warranty claims substantively and therefore will not take judicial notice of plaintiff's letter to Samsung and the CLRA Response Letters. However, the court will take judicial notice of the existence of Samsung's express warranty. This express warranty is accessible on Samsung's website and is relevant in considering defendant's motion to dismiss plaintiff's unjust enrichment claim and request for injunctive relief. *See Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 984 (N.D. Cal. 2010) (taking judicial notice of limited warranty and return information, documents which were either available online or could be obtained from purchase of the relevant product).

**B.  The False Advertising Law, UCL, Misrepresentation, and Breach of Implied Warranty Claims Fail under Rule 9(b).**

First, plaintiff asserts breach of implied warranties, misrepresentation, and claims under the false advertising law and UCL. Defendant argues that the allegations upon which these

5

claims rely fail to satisfy the requirements of Rule 9(b). As defendant puts it, plaintiff fails to identify with particularity "(i) any statement by Samsung that he reviewed and relied upon, much less a false one, (ii) who made the statement(s), (iii) when such statement(s) were made, and (iii) [*sic*] how he reasonably relied upon such statement(s)." (Doc. No. 13 at 22.)

Where "fraud is not a necessary element of a claim," but a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns*, 567 F.3d at 1125. Multiple claims "all stem[ming] from one basic claim grounded in fraud" must each meet the Rule 9(b) standard. *Yastrab v. Apple Inc.*, No. 5:14-cv-01974-EJD, 2015 WL 1307163, at *3 (N.D. Cal. Mar. 23, 2015) (citing *Kearns*, 567 F.3d at 1125).

Because fraud is an essential element of plaintiff's intentional misrepresentation claim, that claim is subject to the pleading requirements of Rule 9(b). *See Andrews Farms v. Calcot, Ltd.*, No. CV-F-07-0464 LJO DLB, 2007 WL 2989563, at *3 (E.D. Cal. Oct. 10, 2007) (listing "intent to defraud" as an element of intentional misrepresentation). While fraud is not an essential element of negligent misrepresentation or UCL claims, courts have held that both causes of action are nonetheless also subject to Rule 9(b)'s requirements. *See Kearns*, 567 F.3d at 1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL."); *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.") Moreover, plaintiff's negligent misrepresentation, UCL, breach of implied warranty, and false advertising law claims all rely on the same factual allegations as plaintiff's intentional misrepresentation claim. Because each of these claims rely on a unified course of fraudulent conduct, they are all grounded in fraud. *See Kearns*, 567 F.3d at 1125. Since plaintiff's claims are subject to the requirements of Rule 9(b),[2] the court will address whether the allegations of plaintiff's FAC

---

[2] In his opposition, plaintiff does not contend that his claims are not subject to Rule 9(b). At the hearing on the motion, plaintiff conceded this point.

satisfy the rule's pleading standard.

Rule 9(b) requires averments of fraud to "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Vess*, 317 F.3d at 1106 (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993)). In his FAC plaintiff alleges that defendant advertised the POWERbot to be compatible with the Amazon, LLC Alexa, and iOS and Android devices via the use of the Remote Applications. (FAC at ¶¶ 32–33.) However, in moving to dismiss Samsung notes that:

> Plaintiff does not identify any actual marketing materials from Samsung containing any of the alleged misstatements, the specific misstatements or advertisements from Samsung that Plaintiff reviewed, or even where Plaintiff reviewed Samsung's advertisements or alleged representations (e.g., on Samsung's website, product packaging, or point of sale displays). Indeed, Plaintiff fails to even allege when he reviewed Samsung's alleged advertisements (including if it was before his purchase of the POWERbot) and which particular representations he found to be material and that he relied on in making his purchasing decision.

(Doc. No. 13 at 21.) The court finds this argument to be persuasive. Plaintiff cannot allege fraudulent misrepresentations without identifying any specific marketing materials or statements in which Samsung made these alleged misrepresentations. *See Kearns*, 567 F.3d at 1126 (dismissing claims where plaintiff's averments of fraud failed to specify: what the television advertisements or other sales material he allegedly relied upon specifically stated; when he was exposed to them or which ones he found to be material; or which sales material he relied upon in making his decision to buy). Without more, "[t]he pleading of these neutral facts fails to give [Samsung] the opportunity to respond to the alleged misconduct." *Id.*

Plaintiff also alleges in the FAC that defendant never advertised that the Samsung "Smart Hub" was required to be purchased in order to utilize the aforementioned mobile device and "Alexa" compatibility features associated with the POWERbot line. (FAC at ¶¶ 34.) "[N]ondisclosure is a claim for misrepresentation in a cause of action for fraud," and it "must be pleaded with particularity under Rule 9(b). *Kearns*, 567 F.3d at 1127.

> [T]o plead the circumstances of omission with specificity plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide

representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information.

*Chulick-Perez v. Carmax Auto Superstores California, LLC*, No. 2:13-cv-02329-TLN, 2014 WL 2154479, at *7 (E.D. Cal. May 22, 2014) (quoting *Eisen v. Porsche Cars North America, Inc.*, No. CV 11–9405 CAS, 2012 WL 841019, at *3 (C.D. Cal. Feb.22, 2012)). As discussed above, in the FAC plaintiff has failed to describe any advertisements in which defendant made alleged misstatements or from which defendant omitted material facts. Thus, plaintiff has not pointed out where defendant should have revealed that the Samsung "Smart Hub" was required to be purchased in order to utilize the POWERbot's compatibility features.[3]

Lastly, at no point in the FAC does plaintiff specify that he was exposed to a particular statement made by defendant when he purchased a POWERbot in January 2018. *See Davidson v. Apple, Inc.*, No. 16-cv-04942-LHK, 2017 WL 976048, at *8 (N.D. Cal. Mar. 14, 2017) (dismissing a claim under Rule 9(b) where plaintiffs failed to allege they "were exposed to the [alleged misrepresentation] prior to purchasing [the product at issue]" or even that they purchased the product before the statement was made). Nor does plaintiff allege in the FAC that he relied upon any particular statement when purchasing his POWERbot. In sum, plaintiff's averments of fraud fail to identify the necessary "who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106.

Accordingly, the court concludes that plaintiff's averments of fraud do not meet the specificity required by Rule 9(b). Once a court determines that "particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim." *Id.* at 1105. "The court should then examine the allegations that remain to determine whether they state a claim." *Id.* Here, the stripped averments of fraud make up the entirety of plaintiff's breach of implied warranty, misrepresentation, false advertising law, and UCL claims. Nothing remains of these claims once the insufficient allegations are disregarded.

---

[3] The court noted at the hearing on the pending motion that the FAC's allegations are also insufficiently specific and too conclusory with respect to the Samsung "Smart Hub." For example, the FAC lacks allegations suggesting that the use of the "Smart Hub" increased reliability or was necessary to make use of the mobile device compatibility.

8

In light of this conclusion, Samsung's remaining arguments have been rendered moot and the court will not address them substantively. Because plaintiff's counsel represented at the hearing on the motion that additional facts can be alleged to meet Rule 9(b)'s requirements, the court dismisses plaintiff's UCL, false advertising law, breach of implied warranty, and misrepresentation claims with leave to amend.[4] *See* Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend pleadings] when justice so requires.").

**C.    Plaintiff's Strict Liability Claim is Barred by the Economic Loss Rule.**

Next, plaintiff alleges in the FAC that "the design or manufacturing defects associated with the lack of compatibility and remote operability of the POWERbot line of vacuums with mobile and Alexa devices has caused Plaintiff and the putative class material harm, improperly inducing consumers to purchase the device despite the device's defects." (FAC at ¶ 120.) Defendant moves to dismiss this claim on the grounds that the economic loss doctrine bars plaintiff from pursuing his strict liability claims because he has not alleged physical harm to himself or a different product.

California recognizes an "economic loss rule," whereby a manufacturer or distributor can only be "strictly liable or liable for negligence for injury to property caused by a defective product, but is not liable in tort for purely economic loss." *Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 902 (E.D. Cal. 2018) (citing *Jimenez v. Super. Ct.*, 29 Cal. 4th 473, 483, 127 Cal.Rptr.2d 614, 58 P.3d 450 (2003)). "The product defect must cause damage to other property, that is, property other than the product itself." *Id.* Here, plaintiff fails to allege in the FAC that the POWERbot's defects caused damage to any property. Rather, plaintiff merely alleges that the design or manufacturing defect associated with the lack of compatibility and

---

[4] Should plaintiff choose to file a second amended complaint, the allegations therein must be made in good-faith in light of Samsung's remaining arguments that: (1) alleged misstatements about the POWERbot's reliability are not actionable under California law; (2) plaintiff's UCL claim does not allege conduct that is unlawful, unfair, or fraudulent; (3) plaintiff has not alleged that defendant did not honor the exclusive remedy set forth in the express warranty; (4) plaintiff has not alleged that he purchased his POWERbot directly from Samsung and therefore does not satisfy vertical privity; and (5) plaintiff has not alleged a "particular purpose" for his breach of implied warranty of fitness for a particular purpose. (Doc. No. 13 at 17–29.)

remote operability of the POWERbot line of vacuums with mobile and Alexa devices has caused him and the putative class to suffer "material harm." (FAC at ¶ 120.) Plaintiff's allegation of "material harm" is "simply too vague and conclusory to credit as true." *Stewart*, 304 F. Supp. 3d at 902 (citing *Twombly*, 550 U.S. at 554–55). Because plaintiff has not alleged property damage other than the product itself, the court must assume that the alleged damages are purely economic losses. *See id.* Thus, the economic loss rule bars such a claim. The court will therefore dismiss plaintiff's strict liability claim with leave to amend.[5]

**D.     Plaintiff's Unjust Enrichment Claim is Not an Independent Claim for Relief.**

Next, Samsung moves to dismiss plaintiff's claim for unjust enrichment, arguing that (1) unjust enrichment is not an independent claim for relief, (2) the claim is duplicative of plaintiff's false advertising, UCL, and misrepresentation claims, and (3) the claim is barred by the express warranty. (Doc. No. 13 at 30–31.)

California law does not recognize unjust enrichment as a cause of action or remedy. *Carlin v. DairyAmerica, Inc.*, 978 F. Supp. 2d 1103, 1118 (E.D. Cal. 2013). Rather, it is "a general principle, underlying various legal doctrines and remedies," that is "synonymous with restitution." *Id.* (internal quotation marks and citations omitted); *see also McKell v. Wash. Mut., Inc.*, 142 Cal.App.4th 1457, 1490 (2006) ("There is no cause of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust.") (citation omitted). If the defendant obtained a benefit from the plaintiff by fraud, "the plaintiff may choose not to sue in tort, but instead to seek restitution on a quasi-contract theory" *Id.* (internal quotation marks and citations omitted). Here, plaintiff does not seek restitution from defendant under a quasi-contract theory. Instead, plaintiff brings a restitution claim as a stand-alone cause of action. (FAC at ¶ 50–59.) California law is clear,

---

[5] "An exception to the economic loss rule exists where the relationship between the parties is such that it would be equitable to impose a duty of care to avoid purely economic loss." *Stewart*, 304 F. Supp. 3d at 903. Here, the FAC is devoid of any allegations that such a relationship existed between plaintiff and Samsung. *See Michael v. Honest Co., Inc.*, No. LA CV 15-07059 JAK (AGRx), 2016 WL 8902574, at *24 (C.D. Cal. Dec. 6, 2016) ("The FAC . . . does not allege more than a relationship between Plaintiffs and Defendant that is an 'everyday consumer transaction.'") As such, the court need not consider whether the exception applies here.

however, that unjust enrichment "cannot be the basis for a separate and free-standing claim for relief under the facts of this case." *Carlin*, 978 F. Supp. 2d at 1118.

Furthermore, restitution cannot be duplicative of plaintiff's contract, torts, or statutory claims. *See In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("Moreover, plaintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims."); *Rosal v. First Fed. Bank of California*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009) ("[A] claim for restitution is inconsistent and incompatible with a related claim for breach of contract or a claim in tort.") (internal quotations marks and citations omitted). Because plaintiff brings false advertising, UCL, and misrepresentation causes of action, his claim for unjust enrichment is in fact duplicative.

Lastly, under California law recovery under a theory of unjust enrichment is brought through a quasi-contract claim, "which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). Here, a contract exists between plaintiff and Samsung by way of plaintiff's purchase of the POWERbot in January 2018, and the parties' rights regarding remedies are set forth in Samsung's express warranty. Samsung's express warranty for plaintiff's POWERbot provides that "this limited warranty covers manufacturing defects in materials and workmanship encountered in normal, noncommercial use of [the] product." (RJN, Ex. 1.) The express warranty also provides in all capital letters and with conspicuous language that "THIS LIMITED WARRANTY . . . STATES YOUR EXCLUSIVE REMEDY." (*Id.*) The sole and exclusive remedy under the express warranty for an allegedly defective device is that Samsung will "repair or replace [the] product, at [its] option and at no charge with new or reconditioned parts, if [the product is] found to be defective during the limited warranty period." (*Id.*) Defendant contends that this constitutes an enforceable, binding agreement setting forth plaintiff's rights. (Doc. No. 13 at 31.) Plaintiff has stated no disagreement with defendant's position in this regard. Thus, plaintiff's unjust enrichment claim cannot stand and will be dismissed with prejudice.

/////

**E.    Plaintiff Does Not Have Article III Standing to Seek Injunctive Relief.**

Lastly, the court considers whether plaintiff has alleged Article III standing sufficient to pursue injunctive relief.  Defendant challenges plaintiff's standing to seek injunctive relief, arguing that plaintiff has failed to allege that he suffered harm because Samsung has already offered to stand behind its warranty and there is no risk plaintiff would buy a POWERbot he believes to be unreliable.  (Doc. No. 13 at 31–32.)

A plaintiff seeking prospective injunctive relief "must demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'  As to the second inquiry, the plaintiff must allege facts establishing a 'real and immediate threat of repeated injury.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  "In cases involving false or misleading product advertising, 'where a plaintiff has no intention of purchasing the product in the future, a majority of district courts have held that the plaintiff has no standing to seek prospective injunctive relief.'" *Davidson*, 2017 WL 976048; *see also Rahman v. Mott's LLP*, 2014 WL 5282106 at *5–6 (N.D. Cal. Oct. 15, 2014); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573-75 (C.D. Cal. 2014); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 458 (S.D. Cal. 2014) ("These consumers will not benefit from the injunctive relief as they cannot demonstrate a probability of future injury; if they know the 'truth' they cannot be further deceived.").  "[A] plaintiff must allege that he or she intends to purchase the products at issue in the future to establish standing for injunctive relief." *Davidson*, 2017 WL 976048 at *6.

Here, Samsung argues that plaintiff requests injunctive relief from the court that was already offered to him and which he ignored.  (Doc. No. 13 at 32.)  The court finds plaintiff's allegations of harm to be unclear considering that he does not allege that Samsung refused to remediate the POWERbot's defects in accordance with its express warranty.  *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1020 (N.D. Cal. 2014) (dismissing implied warranty claim because plaintiff "has not alleged that [defendant] refused to repair or replace his device during the applicable warranty period"); *Galitski v. Samsung Telecomm. Am., LLC*, No. 12-cv-04782, 2013 WL 6330645, at *9 (N.D. Tex. Dec. 5, 2013) (dismissing implied warranty claims "because

plaintiffs do not plausibly allege that . . . Samsung failed to repair or replace their defective phones—the only remedies available under the terms of Samsung's [express] warranty").

Moreover, plaintiff has not alleged facts in his FAC that, if proven, would demonstrate a likelihood that he will be wronged by defendant again. Although plaintiff alleges that he suffered harm because the POWERbot does not function as advertised, plaintiff does not allege in the FAC that he intends to purchase a POWERbot again in the future. *See Mason v. Nature's Innovation, Inc.*, No. 12-cv-3019-BTM-DHB, 2013 WL 1969957, at *4 (S.D. Cal. May 13, 2013) ("[A] plaintiff does not have standing to seek prospective injunctive relief against a manufacturer or seller engaging in false or misleading advertising unless there is a likelihood that the plaintiff would suffer future harm from the defendant's conduct—i.e., the plaintiff is still interested in purchasing the product in question."). As such, plaintiff has not alleged a real and immediate threat of repeated injury.

Because plaintiff has not alleged a sufficient likelihood that he will again be wronged in a similar way by Samsung, the court will also grant defendant's motion to dismiss plaintiff's claim for injunctive relief. However, plaintiff will be granted leave to amend to allege facts establishing his standing for injunctive relief in the event he is able to do so.

## CONCLUSION

For the reasons set forth above:

1. Defendant's motion to dismiss (Doc. No. 13) is granted:
    a. Plaintiff's false advertising, UCL, misrepresentation, breach of implied warranty, and strict liability claims are dismissed with leave to amend;
    b. Plaintiff's unjust enrichment claim is dismissed with prejudice;
    c. Plaintiff's request for injunctive relief is dismissed with leave to amend;
2. Defendant's request for judicial notice (Doc. No. 14) is granted in part and denied in part; and

/////
/////
/////

3. Any second amended complaint that plaintiff elects to file in this action shall be filed within thirty (30) days after the service of this order.

IT IS SO ORDERED.

Dated: **December 18, 2019**

                                              UNITED STATES DISTRICT JUDGE