UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL KERKORIAN,<br><br>  Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>  Defendant. | No. 1:18-cv-00870-DAD-SKO<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. No. 32) |

      This matter is before the court on the motion to dismiss filed by defendant Samsung Electronics America, Inc. ("Samsung" or "defendant") on February 4, 2020. (Doc. No. 32.) The court determined the matter suitable for decision on the papers pursuant to Local Rule 230(g) and defendant's motion was accordingly taken under submission without a hearing. (Doc. No. 40.)[1] For the reasons explained below, the court will grant defendant's motion to dismiss.

---

[1] The undersigned apologizes to the parties for the excessive delay in the issuance of this order. This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion. That situation, which has continued unabated for over twenty-one months now, has left the undersigned presiding over approximately 1,300 civil cases and criminal matters involving 732 defendants at last count. Unfortunately, that situation sometimes results in the court not being able to issue orders in submitted civil matters within an acceptable period of time. This situation is frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel.

# BACKGROUND

Plaintiff filed his initial complaint on June 22, 2018.  (Doc. No. 2.)  In response to this court's order to show cause as to why this matter should not be dismissed for lack of jurisdiction (Doc. No. 6), plaintiff filed his first amended complaint ("FAC") on July 3, 2018.  (Doc. No. 8.)  On December 19, 2019, the court granted defendant's motion to dismiss plaintiff's FAC but also granted plaintiff leave to amend.  (Doc. No. 28.)  On January 21, 2020, plaintiff filed the operative second amended complaint ("SAC").  (Doc. No. 29.)  Therein, plaintiff alleges as follows.

Defendant sells a line of "smart" remote-operated robotic vacuum cleaners called POWERbots.  (SAC at ¶ 2.)  Plaintiff purchased a POWERbot R7040 on or around January 18, 2018.  (*Id.* at ¶ 12.)  Defendant Samsung advertises its POWERbot as working with Amazon's "Alexa" voice assistant software as well as with iOS and Android devices through two smartphone applications called Samsung Connect and Smart Home (collectively referred to as the "Remote Applications").  (*Id.* at ¶ 13.)

According to plaintiff, the POWERbot does not work as advertised and defendant's website omitted information about the POWERbot's mobile capabilities in several respects.  Although defendant advertised the POWERbot as able to work in coordination with Alexa or Samsung's Remote Applications, the POWERbot requires the purchase and use of a "Smart Hub" in order to operate with Alexa or Samsung's Remote Applications.  (*Id.* at ¶ 15.)  Defendant's website did not state that the POWERbot's full functionality can only be utilized through the purchase of a Smart Hub.  (*Id.*)  Moreover, according to plaintiff, the POWERbot's "remote functionality" and compatibility with Alexa and the Remote Applications "does not function as advertised by [Samsung]."  (*Id.* at ¶¶ 18–19.)  Specifically, defendant's Remote Applications "do not save credentials for users as advertised."  (*Id.* at ¶ 20.)  Plaintiff also alleges that the Remote Applications "only work[] on certain router bands (forcing users to change their home internet settings)," "periodically delete[] [themselves] from the user's mobile device," and do not "reliably connect to Samsung's servers or the POWERbot device as advertised."  (*Id.*)  Lastly, plaintiff alleges that defendant's express warranty is unsatisfactory because there is a defect

2

within the defendant's servers that repair or replacement of the POWERbot will not remedy. (*Id.* at ¶ 23.) The express warranty also does not cover the purchase of the Smart Hub, without which the above-mentioned issues cannot be fixed. (*Id.*)

Based on the foregoing, plaintiff's SAC alleges seven causes of action: (1) False Advertising under California Business and Professional Code § 17500 ("FAL"); (2) Unfair Business Practices under California Business and Professional Code § 17200 ("UCL"); (3) breach of implied warranty of fitness for a particular purpose; (4) breach of implied warranty of merchantability; (5) negligent misrepresentation; (6) intentional misrepresentation; and (7) strict liability. (*Id.* at 1.)

On February 4, 2020, defendant filed the pending motion to dismiss plaintiff's SAC, contending that plaintiff's SAC suffers from the same deficiencies as the FAC, which the court previously dismissed. (Doc. No. 32.) Additionally, defendant filed a request for judicial notice. (Doc. No. 33.)[2] In the motion to dismiss, defendant stated that after meeting and conferring with respect to the motion, the parties agreed that plaintiff would dismiss his third and fourth claims with prejudice. (Doc. No. 32 at 2.) Indeed, on February 4, 2020, the parties filed a stipulation to dismiss plaintiff's third and fourth claims (*See* Doc. No. 31) and on February 5, 2020, this court issued a minute order doing so with prejudice pursuant to the parties' joint stipulation. (Doc. No. 34.) On February 20, 2020, plaintiff filed an opposition to defendant's pending motion to dismiss, and defendant filed a reply thereto on February 27, 2020. (Doc. Nos. 35, 38.)

/////

---

[2] Defendant requests that the court take judicial notice of the following documents: (1) the express warranty for the Samsung POWERbot model that plaintiff purchased, which is referenced in paragraphs 23 and 138 of the SAC; (2) plaintiff's April 16, 2018 letter to defendant pursuant to the California Consumer Legal Remedies Act (the "CLRA Letter"), which is referenced by plaintiff in paragraphs 77 and 94 of the SAC; (3) defendant's initial response to plaintiff's CLRA Letter, dated May 17, 2018; and (4) defendant's second response to plaintiff's CLRA Letter dated May 22, 2018 (collectively with defendant's May 17, 2018 response letter, the "CLRA Response Letters"). (Doc. No. 33 at 2.) The court has not consider these documents in ruling on the pending motion to dismiss because the CLRA Response Letters only pertain to the now dismissed breach of implied warranty claims and the express warranty only pertains to the injunctive relief requested, which the court does not address in this order because the claims seeking such relief will be dismissed. Defendant's request for judicial notice is therefore denied as having been rendered moot.

3

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A complaint alleging fraud must satisfy heightened pleading requirements. Fed. R. Civ. P. Rule 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word fraud is not used)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotations omitted). "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

/////

Under Rule 9(b), the "circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of its particular misconduct . . . so they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124 (internal quotations omitted) (citing *Bly-Magee*, 236 F.3d at 1019). To satisfy the particularity standard of Rule 9(b), the plaintiff "must set forth more than the neutral facts necessary to identify the transaction" at issue. *Id.* (internal quotations omitted) (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011)); *see also Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (internal quotations omitted).

**DISCUSSION**

In moving to dismiss all of plaintiff's remaining claims, defendant argues that despite adding new allegations to his SAC, plaintiff nevertheless has failed to cure the many deficiencies that the court identified in its prior order dismissing plaintiff's FAC. (Doc. Nos. 28 at 13; 32 at 10.) First, defendant contends that plaintiff's claims for false advertising, unfair competition, negligent misrepresentation, and intentional misrepresentations fail because they do not meet the heightened pleading requirements of Rule 9(b) and do "not allege conduct qualifying under the [UCL] statute as 'unlawful, unfair, or fraudulent.'" (Doc. No. 32 at 12.) Second, defendant argues that plaintiff's claims for strict liability should be dismissed due to the "economic loss rule," given that plaintiff does not allege actual physical damage to anything other than the product itself. (*Id.*) Finally, defendant asserts that plaintiff lacks Article III standing to obtain the injunctive relief sought. (*Id.* at 29.) Defendant concludes that plaintiff should not be granted another opportunity to amend his complaint because he has already amended his complaint twice and has yet to sufficiently plead his claims. (*Id.*)

**A.     The FAL, UCL, and Misrepresentation Claims**

In its previous order, the court dismissed plaintiff's FAL, UCL, and misrepresentation claims asserted in the FAC due to plaintiff's failure to comply with the specificity requirements of Rule 9(b). (Doc. No. 28 at 8–9.) Those claims were dismissed because plaintiff did not identify

5

1  "any specific marketing materials or statements in which Samsung made these alleged
2  misrepresentations." (*Id.* at 7.) The court further determined that plaintiff had not pointed to
3  where defendant should have revealed that Samsung's "Smart Hub" was required to access the
4  POWERbot's mobile capability features. (*Id.* at 8.) Ultimately, the court concluded that plaintiff
5  failed to allege with specificity what particular statement made by defendant he was exposed to or
6  relied upon when purchasing the device. (*Id.*)

7  In its motion to dismiss the SAC, defendant again argues that plaintiff has failed to satisfy
8  the requirements of Rule 9(b) but also now contends that plaintiff's SAC "is replete with
9  unresolvable factual contradictions, including [by alleging both] that POWERbot's remote
10 operability function does not work *at all*, and [also] that it works but not 'reliably.'" (Doc. No.
11 32 at 10.) Defendant also avers that plaintiff "does not sufficiently allege (1) 'what' specific
12 untrue statements defendant made concerning the Remote Applications, (2) 'how' those
13 statements were false, or (3) 'when' plaintiff was exposed to or relied on them." (*Id.* at 19.)

14 As the court previously outlined, where "fraud is not a necessary element of a claim," but
15 a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of
16 conduct as the basis of that claim . . . the claim is said to be 'grounded in fraud' or to 'sound in
17 fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)."
18 *Kearns*, 567 F.3d at 1125. Multiple claims "all stem[ming] from one basic claim grounded in
19 fraud" must each meet the Rule 9(b) standard. *Yastrab v. Apple Inc.*, No. 5:14-cv-01974-EJD,
20 2015 WL 1307163, at *3 (N.D. Cal. Mar. 23, 2015) (citing *Kearns*, 567 F.3d at 1125).

21 Because fraud is an essential element of plaintiff's intentional misrepresentation claim,
22 that claim is subject to the pleading requirements of Rule 9(b). *See Andrews Farms v. Calcot,*
23 *Ltd.*, No. 1:07-cv-0464-LJO-DLB, 2007 WL 2989563, at *3 (E.D. Cal. Oct. 10, 2007) (listing
24 "intent to defraud" as an element of intentional misrepresentation). While fraud is not an
25 essential element of negligent misrepresentation or UCL claims, the Ninth Circuit has held that
26 both causes of action are nonetheless also subject to Rule 9(b)'s requirements. *Kearns*, 567 F.3d
27 at 1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to
28 claims for violations of the . . . UCL."); *see also Neilson v. Union Bank of Cal., N.A.*, 290 F.

1    Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims
2    for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.").
3    Moreover, plaintiff's negligent misrepresentation, UCL, and FAL claims all rely on the same
4    factual allegations as plaintiff's intentional misrepresentation claim.  Because each of these
5    claims rely on a unified course of fraudulent conduct, they are all grounded in fraud.  *See Kearns*,
6    567 F.3d at 1125.  Because all of plaintiff's remaining claims are subject to the requirements of
7    Rule 9(b), the court will again address whether the allegations of plaintiff's SAC satisfy that
8    Rule's heightened pleading standard.
9         The court has reviewed the new allegations set forth in plaintiff's SAC and again
10   concludes that plaintiff has failed to meet the heightened pleading requirements of Rule 9(b).
11   Plaintiff does not identify any specific marketing materials or statements in which defendant
12   made the alleged misrepresentations about which he purports to complain.  Such specific
13   allegations are necessary in order for plaintiff to sufficiently allege the remaining causes of action
14   that he brings in this case.  Plaintiff instead merely claims that defendant's marketing statements
15   were posted on its website "around January 18, 2018, which was around the time that [p]laintiff
16   researched and purchased his POWERbot."  (SAC at ¶ 39.)  These vague allegations lack the
17   specificity necessary for claims rooted in fraud.  *See Kearns*, 567 F.3d at 1126 (dismissing claims
18   where plaintiff's averments of fraud failed to specify:  what the television advertisements or other
19   sales material he allegedly relied upon stated; when he was exposed to them or which ones he
20   found to be material; or which sales material he relied upon in making his decision to buy).
21        Although plaintiff attempts to describe advertisements in which defendant made
22   misstatements or from which defendant omitted material facts, plaintiff does not adequately
23   allege representative samples of such advertisements.  For example, plaintiff directs the court to a
24   product description that was posted on defendant's website advertising the POWERbot as "(1)
25   remotely operational through the use of, and compatible with, the Amazon, LLC Alexa; and (2)
26   remotely operational through the use of, and compatible with, the Samsung Connect or Smart
27   Home application available for iOS or Android devices."  (Doc. No. 29 at ¶¶ 38–39.)  However,
28   plaintiff does not identify any specific marketing materials or statements in which Samsung made

these alleged misrepresentations. Instead, plaintiff only offers his own conclusory characterizations of the vague statements he claims appeared online. As in its previous order, the court concludes that plaintiff "cannot allege fraudulent misrepresentations without identifying any specific marketing materials or statements." (Doc. No. 28 at 7) (citing *Kearns*, 567 F.3d at 1126).

The court also concludes that plaintiff has failed to adequately allege a claim to the extent he relies on a nondisclosure theory of liability. "[N]ondisclosure is a claim for misrepresentation in a cause of action for fraud," and it "must be pleaded with particularity under Rule 9(b)." *Kearns*, 567 F.3d at 1127.

> [T]o plead the circumstances of omission with specificity plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information.

*Chulick-Perez v. Carmax Auto Superstores California, LLC*, No. 2:13-cv-02329-TLN, 2014 WL 2154479, at *7 (E.D. Cal. May 22, 2014). As discussed above and in the court's previous order, plaintiff has repeatedly failed to describe any advertisements in which defendant made the alleged misstatements or from which defendant omitted material facts. *See Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 924 (N.D. Cal. 2012) ("A plaintiff asserting causes of action for fraudulent misrepresentation under the UCL . . . must allege that he was exposed to a *particular* representation that is claimed to be deceptive.") (emphasis added). Plaintiff has not pointed out in his alleged SAC where defendant should have revealed that the Samsung "Smart Hub" was required to be purchased in order to utilize the POWERbot's compatibility features.[3]

Accordingly, plaintiff has not adequately alleged his UCL, FAL, and misrepresentation claims, all of which are rooted in fraud. The court will therefore grant defendant's motion to

---

[3] To the extent plaintiff's UCL claim is premised on defendant's alleged unfair business practices as opposed to defendant's fraud, that argument is likewise unpersuasive given the conclusory nature of plaintiff's allegations. *See, e.g.*, *Park-Kim v. Daikin Industries, Ltd*, No. 2:15-cv-09523-CAS-KKx, 2016 WL 6744764, at *14 (C.D. Cal. Nov. 14, 2016) (finding that the plaintiffs "cannot state a claim pursuant to the UCL's unfairness prong merely by making conclusory allegations").

8

dismiss with respect to those claims.

**B.      Plaintiff's Strict Liability Claim**

Plaintiff additionally alleges a strict liability claim because he was harmed by a product made by defendant. (SAC at ¶ 130.) As this court previously determined, plaintiff's recovery on such a claim is barred by the economic loss rule as a matter of law. (*See* Doc. No. 28 at 9.) For plaintiff to succeed on his strict liability claim, he must allege physical harm to something other than the product itself. *Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 902 (E.D. Cal. 2018) (citing *Jimenez v. Super. Ct.*, 29 Cal. 4th 473, 483 (2003)). "'Financial harm' and 'loss of use' . . . are economic losses only." *Id.* Plaintiff has not put forth an allegation of physical harm to anything other than the POWERbot, instead merely reiterating what this court already found to be vague and conclusory allegations. (*See* Doc. No. 28 at 10.) Plaintiff only alleges injury by means of "material harm, improperly inducing customers to purchase the devices despite the devices' defects."[4] (SAC at ¶ 140.) Because plaintiff has not alleged property damage or personal harm other than the damage to the POWERbot product itself, it is evident to the court that plaintiff can only allege damages that constitute pure economic loss. The court will therefore dismiss plaintiff's strict liability claim as well.

**C.      Whether the Court Should Grant Leave to Amend**

Generally, "[c]ourts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009). There are several factors a district court considers in whether to grant leave to amend, including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility. *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Repeated failures to cure

---

[4] In an apparent effort to avoid application of the economic loss rule, plaintiff—citing no authority—argues that the storage space taken up by defendant's app constitutes physical damage. (Doc. No. 35 at 9.) The court does not find this argument viable, particularly in light of the fact that loss of use is an example of unrecoverable economic loss. *Casden Builders Inc. v. Entre Prises USA, Inc.*, No. 10-cv-2353-ODW-CWx, 2010 WL 2889496, at *3 (C.D. Cal. July 21, 2010).

deficiencies by amendment can also justify withholding leave to amend. *Garcia v. Schlumberger Lift Solutions, LLC*, No. 1:18-cv-01261-DAD-JLT, 2020 WL 903208, at *1 (E.D. Cal. Feb. 25, 2020); *see also Sonoma Cnty. Ass'n of Retired Employees v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 1013). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). "If no amendment would allow the complaint to withstand dismissal as a matter of law, courts consider amendments futile." *Id.*

Here, defendant argues that plaintiff should not be granted further leave to amend and that the case should be dismissed with prejudice because plaintiff has not yet successfully alleged his claims after having three chances to do so. (Doc. No. 32 at 30–31.) In his opposition, plaintiff argues that leave to amend should be granted because the FAC was nearly identical to the original complaint except that the amount in controversy was added. (Doc. No. 35 at 10.)

The court concludes that granting further leave to amend would be futile here. The court has now twice considered the adequacy of plaintiff's claims asserted in this action and plaintiff still has not been able to adequately allege facts under the applicable heightened pleading standard of Rule 9(b). Specifically, plaintiff has failed to identify any specific or particular advertisement purporting to make the misrepresentations alleged in plaintiff's SAC. The court will therefore deny further leave to amend.[5]

**CONCLUSION**

For the reasons set forth above, the court grants defendant's motion to dismiss (Doc. No. 32) without leave to amend. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  **November 17, 2021**

UNITED STATES DISTRICT JUDGE

---

[5] Because all of plaintiff's other claims have been dismissed, injunctive relief is not available to plaintiff. Accordingly, plaintiff's request for injunctive relief has been rendered moot and the court will not address defendant's arguments that plaintiff lacks Article III standing to seek said injunctive relief. (Doc. No. 32 at 29.)

10